**AMERICAN LAMB COMPANY, et al., Appellees,**

v.

**The UNITED STATES, Appellant,**

**and**

**New Zealand Meat Products Board, et al., Intervenors.**

**Appeal No. 86–560.**

United States Court of Appeals, Federal Circuit.

Feb. 28, 1986.

Catherine R. Field, Office of Gen. Counsel, U.S. Intern. Trade Com'n, Washington, D.C., argued for appellant. With her on brief were William E. Perry, Lyn M. Schlitt, Gen. Counsel and Michael P. Mabile, Asst. Gen. Counsel.

Edward J. Farrell, Bronz & Farrell, Washington, D.C., argued for intervenors, New Zealand Meat Products Bd., et al.

Robert T. Wray, Robert Wray Associates, Washington, D.C., argued for appellee.

N. David Palmeter, David P. Houlihan and Alan H. Price, Mudge Rose Guthrie Alexander & Ferdon, Washington, D.C., were on brief for amicus curiae Crystal Intern. Corp., et al. Victor T. Fuzak and Craig M. Indyke, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., of counsel.

Thomas B. Wilner, Sukhan Kim and Kimberly Till, Arnold & Porter, Washington, D.C., were on brief for amicus curiae Hankook Tire Mfg. Co., et al.

Italo H. Ablondi, F. David Foster, Sturgis M. Sobin and Pamela A. McCarthy, Ablondi & Foster, P.C., Washington, D.C., were on brief for amicus curiae Taiwan Elec. Appliance Mfrs. Assn.

Ronald N. Isroff and Morton L. Stone, Ulmer, Berne, Laronge, Glickman & Curtis, Cleveland, Ohio, were on brief for amicus curiae Glaverbel S.A.

Eugene L. Stewart, Terrance P. Stewart, James R. Cannon, Jr. and Charles S. St. Charles, Stewart and Stewart, Washington, D.C., were on brief for amicus curiae Jeanette Sheet Glass Corp.

Before MARKEY, Chief Judge, and BALDWIN and NIES, Circuit Judges.

MARKEY, Chief Judge.

Interlocutory appeal from an order of the United States Court of International Trade, 611 F.Supp. 979 (Ct.Int'l Trade 1985), ordering the U.S. International Trade Commission (ITC) to reconsider a preliminary determination issued in an antidumping duty investigation under section 733(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673b(a) (1982). The court certified its order for immediate appeal. We remand with instructions to vacate the order.

## Background

On April 18, 1984, three domestic lamb producers, American Lamb Co., Denver Lamb Co., and Iowa Lamb Corp. (Denver Lamb), filed petitions with the ITC and the International Trade Administration of the U.S. Department of Commerce (ITA), alleging that imports of lamb meat from New Zealand are being subsidized and then sold in the United States at less than fair value (LTFV). Accordingly, ITC instituted preliminary countervailing and antidumping investigations under sections 703(a) and 733(a), respectively, of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1671b(a) and 1673b(a), to determine whether there is a reasonable indication that an industry in the United States is being materially injured, or is being threatened with material injury, or whether there is a reasonable indication that the establishment of an industry in the United States is being materially retarded, by reason of imports of such merchandise.

Notice of the initiation of ITC's investigation, and of a public conference to be held in connection with the investigation, was posted in the Office of ITC's Secretary and was published in the Federal Register on April 25, 1984. 49 Fed.Reg. 17,828 (1984). The conference was held on May 10, and all persons so requesting were permitted to appear in person or by counsel.

Denver Lamb presented the evidence disclosed in its petitions (declining production of live lambs, decreased prices, and increasing lamb and sheep slaughter). During its preliminary investigation, ITC also received information from the United States Department of Agriculture, packers and producers of lamb meat, academic and trade association researchers, and from intervenors New Zealand Meat Producers Board, Meat Export Development Company, and New Zealand Lamb Company.

Having weighed all the evidence, ITC determined on May 25, 1984 (by a 4–2 vote) that there is no reasonable indication that the domestic lamb industry is being materially injured, or being threatened with material injury, or that the establishment of an industry in the United States is being materially retarded, by reason of the importation of lamb meat from New Zealand. *Lamb Meat from New Zealand,* Investiga-

tions Nos. 701–TA–214 (Preliminary), and 731–TA–188 (Preliminary), U.S.I.T.C. Pub. No. 1534 (1984). Those determinations were published in the Federal Register. 49 Fed.Reg. 24,458 (June 13, 1984).

Denver Lamb sought review in the Court of International Trade of those negative preliminary determinations pursuant to 19 U.S.C. § 1516a(a)(1)(A)(iii), arguing that the action should be remanded because the ITC weighed conflicting evidence in making its determinations and because the weighing of conflicting evidence was contrary to the decisions of the court in *Republic Steel Corp. v. United States*, 591 F.Supp. 640 (1984), *reh'g denied*, 16 Cust.B. & Dec., No. 14, at 55 (Ct. Int'l Trade 1985), and *Jeannette Sheet Glass Corp. v. United States*, 607 F.Supp. 123 (Ct. Int'l Trade 1985).

ITC conceded that if those decisions are followed, the action should be remanded, but argued that the cases should not be followed because 19 U.S.C. § 1673b(a) authorizes ITC to weigh conflicting evidence in a preliminary investigation.

The court dismissed as moot the challenge to ITC's negative preliminary determination resulting from the countervailing duty investigation, No. 701–TA–214 (Preliminary), because, effective April 1, 1985, the Office of the U. S. Trade Representative terminated New Zealand "as a country" under Articles VI, XVI, and XXIII of the General Agreement on Tariffs and Trade (GATT Subsidies Code). 50 Fed. Reg. 13,111 (April 2, 1985). Thus, New Zealand was no longer entitled to an injury test in countervailing duty investigations.[1] 611 F.Supp. at 980 n. 1; *see* 19 U.S.C.

§ 1671, as amended by Trade and Tariff Act of 1984, Pub.L. No. 98–573, § 602(a), 98 Stat. 3024.[2]

Concerning the challenge to the antidumping duty determination, the court wrote:

Defendant's arguments have been rejected three times within the year by two judges of this Court with broad experience in this complex area of the law. Under these circumstances, *stare decisis* counsels the Court to follow the prior decisions. Defendant should address its arguments to our appellate court.

611 F.Supp. at 981. The court remanded the action, in light of *Republic Steel* and *Jeannette Sheet Glass*, instructing ITC to reconsider the antidumping determination.

On July 19, 1985, the court certified its order allowing ITC to appeal to this court pursuant to 28 U.S.C. § 1292(d)(1). The trial court granted ITC's motion to stay proceedings until this court denied, or rendered a decision in, the appeal.

On October 15, 1985, this court granted ITC's petition to accept the interlocutory appeal. Briefs were filed by the parties, intervenors, and *amici*,[3] and oral argument was presented.

## Issue

Whether ITC's weighing of all evidence in applying the "reasonable indication" standard of 19 U.S.C. § 1673b(a) in a preliminary investigation is permissible.

1. Denver Lamb filed a new countervailing duty petition with the ITA on March 26, 1985. *Lamb Meat from New Zealand: Initiation of Countervailing Duty Investigation*, 50 Fed.Reg. 15,949 (April 23, 1985). That matter is not before us.

2. Because the preliminary determination at issue here is that under the antidumping laws and not that under the countervailing duty laws, this opinion deals with 19 U.S.C. § 1673b(a) and not with § 1671b(a). Because, however, the question before us deals with preliminary determinations of material injury or threat thereof, and because both sets of laws require those determi-

nations and employ the phrase "reasonable indication", what is said here may be seen as applicable to preliminary determinations of injury under both sets of laws.

3. Crystal International Corporation and Flachglas, A.G.; Taiwan Electrical Appliance Manufacturers Association; Glaverbel S.A.; Jeannette Sheet Glass Corp.; and Hankook Tire Manufacturing Co., Ltd., Hankook Tire American Corp., Kumho and Co., Inc., Kumho U.S.A., Inc., Hyosung Corp., and Hyosung America, Inc.

## OPINION

### I. Introduction [4]

The important question before this court involves a statute so fundamental to the application of the United States antidumping laws that an introductory listing of implementing procedures appears appropriate. *See generally* Horlick, *Summary of Procedures Under the United States Antidumping and Countervailing Duty Laws,* 58 St. John's L.Rev. 828 (1984).

Normally, as in this case, proceedings are initiated when petitions are filed by interested parties on the same day with the ITC and ITA, § 1673a(b)(2), though ITA may self-initiate an investigation, 19 U.S.C. § 1673a(a); *see* 19 C.F.R. § 353.35 (1985).

A normal antidumping duty proceeding involves five stages:

(1) The ITA decides within twenty days of receiving a petition whether to initiate an investigation. 19 U.S.C. § 1673a(c); *see* 19 C.F.R. § 353.37(a) (1985). An investigation will be initiated if the petition alleges the necessary elements for imposition of a duty and is accompanied by information "reasonably available to the petitioner supporting the allegations." 19 U.S.C. § 1673a(c); ITA's self-initiated investigations are based on "information available to it." 19 U.S.C. § 1673a(a); *see United States v. Roses, Inc.,* 706 F.2d 1563, 1566 (Fed.Cir.1983). If ITA finds a petition insufficient an investigation is not initiated, 19 U.S.C. § 1673a(c)(3), and any investigation initiated by ITC is terminated. 19 U.S.C. § 1673b(a).

(2) If ITA has not found the petition insufficient, ITC must preliminarily determine within 45 days of the filing of the petition "whether there is a reasonable indication" that a domestic industry is being materially injured or threatened with material injury. 19 U.S.C. § 1673b(a). ITC bases its preliminary determination on questionnaires sent to importers and domestic interests, public conferences, post conference briefs, and exhibits. If that determination be in the negative, ITC terminates the investigation. *Id.; see* 19 C.F.R. § 207.18.

(3) If ITC finds a reasonable indication of injury, ITA must preliminarily determine, within 160 days of the petition filing date (subject to extension of up to 210 days, 19 U.S.C. § 1673b(c)(1)), whether there is a "reasonable basis to believe or suspect" that the merchandise is being sold, or is likely to be sold, at LTFV. 19 U.S.C. § 1673b(b)(1); *see* 19 C.F.R. § 353.-39. An affirmative preliminary LTFV determination results in suspension of liquidation of duties and in posting of bonds for the merchandise. 19 U.S.C. § 1673b(d)(1)-(2). A negative preliminary determination prevents imposition of those provisional remedies but does not terminate the investigation.

(4) Within 75 days of its preliminary determination (subject to extension of up to 135 days, 19 U.S.C. § 1673d(a)(2)), ITA makes a final determination respecting the sale of merchandise at LTFV. 19 U.S.C. § 1673d(a)(1). If that final determination is in the negative, the investigation is terminated. 19 U.S.C. § 1673d(c)(2).

(5) If ITA's final LTFV determination is in the affirmative, ITC makes its final determination of material injury. 19 U.S.C. § 1673d(b)(1).[5] That determination is based on technical and economic testimony

---

4. Several appeals docketed in this court have been stayed pending the outcome of this appeal. *Jeannette Sheet Glass, supra,* Nos. 85-2455/2554/2555/2589, 86-519/609/700 (Fed. Cir. June 7—Nov. 29, 1985); *American Grape Growers Alliance For Fair Trade v. United States,* 615 F.Supp. 603 (Ct.Int'l Trade), No. 85-2717 (Fed.Cir. Aug. 18, 1985); *Armstrong Rubber Co. v. United States,* 614 F.Supp. 1252 (Ct.Int'l Trade), No. 85-2707 (Fed.Cir. Aug. 26, 1985). In addition, several cases pending in the Court of International Trade will be directly affected by resolution of the question on appeal.

5. If ITA's preliminary determination is in the affirmative, ITC's final determination must be made within 120 days of that ITA determination or within 45 days of ITA's final determination, whichever is later. 19 U.S.C. § 1673d(b)(2). If ITA's preliminary determination is negative, ITC's final determination must be made within 75 days of any affirmative final determination of ITA. 19 U.S.C. § 1673d(b)(3).

given at a trial-like hearing. If ITC finally determines that no injury exists, the investigation is terminated. If ITC determines that injury exists, ITA issues an antidumping duty order. 19 U.S.C. § 1673d(c)(2).

Judicial review in the Court of International Trade is available of any negative preliminary determination (stages 1–3), 19 U.S.C. § 1516a(a)(1), and of any final determination (stages 4 and 5). 19 U.S.C. § 1516a(a)(2).

## II. Court of International Trade Decisions

In making preliminary determinations of injury, and in applying the "reasonable indication" standard, ITC has been weighing conflicting evidence. It has, since its very first investigation under the 1974 Act, been determining that there is no "reasonable indication" of material injury or threat when: (1) there is clear and convincing evidence of the absence of such reasonable indication; and (2) the record shows it extremely unlikely that evidence of a "reasonable indication" would be developed in a final investigation. *Butadiene Acrylonitrile Rubber from Japan*, Inq. No. AA1921–Inq.–1, U.S.I.T.C. Pub. No. 727, at 5 (1975). It applied the same criteria in subsequent proceedings. *See, e.g., Low-Fuming Brazing Copper Wire and Rod from France, New Zealand and South Africa*, Inv. Nos. 701–TA–237 and 731–TA–247 (Preliminary), U.S.I.T.C. Pub. No. 1673 (1985); *Uncoated Free Sheet Offset Paper from Canada*, Inq. No. AA1921–Inq.–10, U.S.I.T.C. Pub. No. 869 (1978). It was that administrative procedure that was rejected by the court in *Republic Steel* and *Jeannette Sheet Glass*.

In *Republic Steel*, the court remanded to the ITC two determinations in countervailing duty investigations because ITC weighed conflicting evidence in making a negative preliminary determination. The court wrote:

> The low threshold of the ITC's determination of whether there is a reasonable indication of injury is the unavoidable and logical consequence of the completely different nature of the two stages of the ITC's involvement in these proceedings. *The object of these determinations should have been simply to find whether there were any facts which raised the possibility of injury. The resolution or interpretation of conflicting facts should have been reserved for a possible final injury determination.*
>
> The fundamental point which the Court emphasizes is that the standard claimed by the ITC for its preliminary determination of reasonable indication of injury, is actually the proper standard for a final determination. If applied at this early stage it would create a serious imbalance in the operation of the law.

591 F.Supp. at 650 (emphasis in original).

The court in *Republic Steel* denied ITC's motion for reconsideration and reaffirmed its rule that "the weighing of conflicting evidence by the ITC cannot be done at the threshold without entirely distorting the operation of the law and impeding the legislative intention that investigations be commenced on the basis of possibilities." 16 Cust. B. & Dec., No. 14, at 56. The court continued:

> Even if the ITC is held to a standard which required them to have "clear and convincing" evidence that there is no possibility of injury, the operation of the law is being distorted.
>
> The right to a full investigation was not intended to depend on anything more than a reasonable showing by a petitioner from matters fairly within its capacity to know. It was not intended to depend on a pre-investigation of conflicting evidence.

*Id.* The court then gave its own set of guidelines as to when ITC could terminate the investigation at the preliminary stage:

> If the petition does not contain the evidence of injury which could reasonably be expected to be within petitioner's knowledge, or is false, or is in conflict on essential points with matters of public record, or does not state injury as a matter of law even if its contents are taken as true, then the ITC may properly

conclude that there is no reasonable indication of injury and no need for further investigation.

*Id.*

Because a negative preliminary determination is overturned by the Court of International Trade only if found to have been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 19 U.S.C. § 1516a(b)(1)(A), the court felt that if ITC weighed the evidence, its decision could never be reversed. 19 Cust.B. & Dec., No. 14, at 56. The court found it difficult to conceive that Congress wanted ITC to have "an absolute veto power on the commencement of countervailing and antidumping investigations." *Id.*

In *Republic Steel*, ITC had considered whether injury was reasonably indicated by importations from individual countries. The court held that ITC must in a preliminary investigation consider the cumulative or combined effect of all competitive, subsidized, or allegedly subsidized importations of a particular product from all involved countries. The court held that its requirement for cumulation did not conflict with the requirement that importations from a particular country be the cause of injury, because that question could be determined in the final determination. 591 F.Supp. at 645. The court said those "potentially contradictory demands are reconciled by operating at different stages of the investigation." *Id.* at 646. The court thus distinguished ITC's preliminary and final determinations on the basis of the court's own requirement that importations be cumulated in the former and particularized in the latter, leading it to create the "possibility" standard.

The court gave these reasons for its focus on a "possibility" of injury:

(1) The statute calls for a "reasonable indication" thus suggesting "only the barest clues or signs [are] needed to justify further inquiry." 591 F.Supp. at 646.

(2) In discussing the reasonable indication standard, "the House Committee on Ways and Means stated that a reasonable indication will exist in 'each case in which the facts reasonably indicate that an industry in the United States could *possibly* be suffering material injury....'" *Id.* (quoting House Rep. No. 317, 96th Cong., 1st Sess. 52 (1979)).

(3) The Senate Committee on Finance noted that the ITC preliminary determination, together with the sufficiency determination of ITA, implemented the United States' obligations under GATT Subsidies Code. That legislative history "indicates that the ITC decision is primarily *part of the decision as to whether an investigation should be initiated,*" and thus "should display the same spirit of receptiveness to the initiation of investigations as the ITA sufficiency determination." 591 F.Supp. at 647 (emphasis in original).

(4) The "limited purpose" of the preliminary injury determination is to "weed out those cases which were clearly without merit and which could not possibly deserve further investigation." *Id.*

(5) ITC's preliminary determination is in the "midst of the receptive standard of the *preceding* determination and the relaxed standard of the *following* determination." *Id.* at 648 (emphasis in original). Therefore, "it is reasonable to view the first ITC determination as designed only to eliminate those matters in which there is nothing whatsoever deserving investigation." *Id.*

In *Jeannette Sheet Glass*, the court applied the *Republic Steel* rationale in antidumping investigations and remanded the action to ITC. The court wrote:

Here, the Commission's preliminary injury determinations did not address the question of whether there is sufficient information in the record to raise the *possibility* of injury, but rather sought to definitively resolve the issues by weighing the conflicting evidence. Put another way, the Commission's "preliminary" determination, in effect, constituted a final determination predicated solely upon data submitted in the forty-five day period permitted at the preliminary stage.

607 F.Supp. at 129 (emphasis added). On at least two other occasions, the court adopted the analysis outlined in *Republic Steel* and remanded cases to ITC. *Armstrong Rubber Co. v. United States*, 614 F.Supp. 1252 (Ct.Int'l Trade 1985); *American Grape Growers Alliance v. United States*, 615 F.Supp. 603 (Ct.Int'l Trade 1985).

The court's concern is directed to ITC's consideration of any evidence that would negate the allegations or information in a petition. The court's interpretation would thus require an affirmative preliminary determination, and (assuming an ITA preliminary LTFV determination) a subsequent full investigation, whenever information accompanying a petition raises the mere "possibility" of material injury, regardless of any contrary evidence. The difficulty is two-fold: (1) the statutory standard, as the court recognized, is "reasonable indication", not "possibility"; and (2) the court's order that ITC must not weigh the evidence in conducting a preliminary injury investigation is not in accord with the intent of Congress.

### III. Standard of Review

■ A reviewing court must accord substantial weight to an agency's interpretation of a statute it administers. *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450–51, 98 S.Ct. 2441, 2445–46, 57 L.Ed.2d 337 (1978); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Though a court may reject an agency interpretation that contravenes clearly discernible legislative intent, its role when that intent is not contravened is to determine whether the agency's interpretation is "sufficiently reasonable". *Federal Election Committee v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981); *see Melamine Chemicals, Inc. v. United States*, 732 F.2d 924, 928 (Fed.Cir.1984). The agency's interpretation need not be the only reasonable construction or the one the court would adopt had the question initially arisen in a judicial proceeding. *Chevron, U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843 n. 11, 104 S.Ct. 2778, 2782 n. 11, 81 L.Ed.2d 694 (1984); *see Consumer Products Division, SCM Corp. v. Silver Reed America, Inc.*, 753 F.2d 1033, 1039 (Fed.Cir.1985).

■ Applying those guidelines, we reject the court's imposition of the mere possibility standard. One writing on a clean slate might find the court's reasoning fully acceptable, but a "court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Chevron, U.S.A., supra*, 467 U.S. at 843, 104 S.Ct. at 2782.

Since the enactment of the 1974 Act, ITC has consistently viewed the statutory "reasonable indication" standard as one requiring that it issue a negative determination, as above indicated, only when (1) the record as a whole contains clear and convincing evidence that there is no material injury or threat of such injury; and (2) no likelihood exists that contrary evidence will arise in a final investigation. That view, involving a process of weighing the evidence but under guidelines requiring clear and convincing evidence of *"no* reasonable indication", and no likelihood of later contrary evidence, provides fully adequate protection against unwarranted terminations. Indeed, those guidelines weight the scales in favor of affirmative and against negative determinations. Under the appropriate standard of judicial review, ITC's longstanding practice must be viewed as permissible within the statutory framework.

### IV. "Reasonable Indication" v. "Mere Possibility"

We are unable to join the court in its view that the statutory phrase "reasonable indication" means the same as a mere "possibility", or that it suggests "only the barest clues or signs needed to justify further inquiry." The statute calls for a reasonable indication of injury, not a reasonable indication of need for further inquiry. Moreover, ITC's use of "extremely unlikely" in considering need for further inquiry

would appear to meet the court's concern for premature dismissal of that need.

The single sentence quoted by the court from the House Report cannot serve to substitute "possibility" for "reasonable indication" in the statute. Though the word "possibly" appears in that sentence, it follows the words "facts reasonably indicate", implying the need to determine facts and the exercise of reason.

Nor do we find in the statute a requirement for grouping ITC's preliminary determination with ITA's sufficiency determination. The statute establishes the five stages above described, each independent of the others and each with its distinct focus and purpose. Moreover, such grouping would not convert "reasonable indication" to "possibility" or require ITC to look only at the petition and its accompanying information. This court has determined that, when ITA determines the sufficiency of the petition, "Congress intended the *application of agency expertise*, not only to examine the petition and supporting data for internal inconsistencies, but also to evaluate it in light of a wide body of other information, to the end that, so far as possible, the commencement of unwarranted investigations should be avoided." *United States v. Roses Inc., supra,* 706 F.2d at 1569 (emphasis supplied).

ITC would not be able to fulfill what the court described as the "limited purpose" of weeding out "those cases which were clearly without merit" if it must proceed to a final determination whenever it finds a mere "possibility" of injury in the petition and accompanying information. Virtually every petitioner can be expected to submit allegations and information sufficient to show *some* "possibility" of injury.

### V. Congressional Intent

■ ITC's weighing of evidence in complying with § 1673b(a) is in full accord with the intent of Congress.

We begin with the best source of congressional intent, the statute:

> Except in the case of a petition dismissed by the administering authority under section 1673a(c)(3) of this title, the Commission, within 45 days after the date on which a petition is filed under section 1673a(b) of this title or on which it receives notice from the administering authority of an investigation commenced under section 1673a(a) of this title, shall make a determination, *based upon the best information available to it at the time of the determination, of whether there is a reasonable indication* that—
>
> (1) an industry in the United States—
>
> (A) is materially injured, or
>
> (B) is threatened with material injury, or
>
> (2) the establishment of an industry in the United States is materially retarded, by reason of imports of the merchandise which is the subject of the investigation by the administering authority. If that determination is negative, the investigation shall be terminated.

19 U.S.C. § 1673b(a) (emphasis supplied).

The legislative history supports the statutory statement that ITC should use "the best information available" in applying the "reasonable indication" standard. Congress introduced that standard when it added § 201(c)(2) to the Antidumping Act of 1921, Ch. 14, § 201, 42 Stat. 9, 11 (1921), in the Trade Act of 1974, Pub.L. No. 93–618, § 321(a)(2), 88 Stat. 1978, 2043–44 (1974) (1974 Act). When Congress repealed the Antidumping Act of 1921 in the Trade Agreements Act of 1979, Pub.L. No. 96–39, § 106(a), 93 Stat. 144, 193 (1979) (1979 Act), it adopted the "reasonable indication" standard for countervailing and antidumping preliminary determinations. 19 U.S.C. §§ 1671b(a), 1673b(a). Congress intended that the Commission apply the standard "in essentially the same manner" as it applied the standard under the 1974 Act. S.Rep. No. 249, 96th Cong., 1st Sess. 66, *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 449, 452.

■ The purpose of a preliminary injury determination is to "eliminate unnecessary and costly investigations which are an administrative burden and an impediment to

trade." S. Rep. No. 1298, 93rd Cong., 2d Sess. 171, *reprinted in* 1974 U.S.Code Cong. & Ad.News, 7186, 7308. When the procedure was adopted in the 1979 Act, the law became "more clearly consistent with the international agreement which permits the imposition of provisional measures, that is, suspension of liquidation and the posting of a cash deposit, bond or other security on each entry subject to the suspension, only after an affirmative preliminary determination has been made that there are sales at less than fair value and that sufficient evidence of material injury has been presented." H.R. Rep. No. 317, 96th Cong., 1st Sess. 60–61 (1979).

██ In *Budd Co. Railway Division v. United States*, 507 F.Supp. 997, 1000, 1 C.I.T. 67 (1980), the court correctly noted that in requiring that ITC's preliminary determination be based on the "best information available to it," *see* 19 U.S.C. § 1677e(b); 19 C.F.R. § 207.17, "Congress has prescribed a thorough investigation by the Commission prior to the making of its preliminary determination." The same view is expressed in the House Report:

> The time limit provided in the bill for an ITC preliminary determination, although longer than that under present law, is still quite brief. It is therefore intended that the ITC will investigate the allegations in the petition *in as thorough a manner as possible using the information available within that time period, and will provide interested parties a reasonable opportunity to present their views.* Such opportunity does not necessarily include a hearing such as that required prior to a final determination.

H.R.Rep. No. 317, *supra,* at 61 (emphasis supplied); *see also* S.Rep. No. 249, *supra,* at 66, *reprinted in* 1979 U.S.Code & Cong. & Ad.News, at 452.

In *Budd Co.*, the court noted that the Congressional mandate to conduct a thorough investigation based upon the best information available

> does not limit "the best information available" to that furnished by the peti-

tioner or by any party-in-interest to the proceedings. The term "available" as used in the statute must be construed in accordance with its common meaning. In so doing, it is clear that all information that is "accessible or may be obtained," from whatever its source may be, must be reasonably sought by the Commission. It is only in this manner that the Commission can comply with the intended congressional mandate to conduct a "thorough investigation."

507 F.Supp. at 1003–04 (footnote omitted). The court in *Budd Co.* also indicated that the "affirmative obligation and duty of the Commission to conduct a 'thorough investigation' is not relieved" by a petition accompanied by information reasonably available to the petitioner supporting the allegations in the petition. *Id.* at 1001. Clearly, ITC cannot conduct a "thorough investigation" if it is permitted to review only such evidence as might support a petition.

Although a hearing is not required in a preliminary determination proceeding, ITC often includes, as it did here, a public conference "at which interested parties may present their views without the opportunity for cross-examination." *Budd Co. Railway Division, supra,* 507 F.Supp. at 1001; *see* Horlick, *supra,* 58 St. John's L.Rev. at 829–30. If ITC were precluded from all weighing of evidence, i.e., if it were required to disregard all evidence tending to disprove the allegations in a petition, there would be neither reason nor incentive for parties other than petitioners to present their views.

██ A series of factors—Congress' requirement that ITC conduct a thorough investigation, using the best information available to it, Congress' expectation of opportunity for interested parties to present their views, and Congress' provision of the "reasonable indication" standard for use in investigations initiated in response to a petition and in ITC's self-initiated investigations—all militate against a view that Congress intended ITC to disregard evidence that clearly and convincingly refutes the allegations in a petition.

Stated another way, the notion that allegations in a petition found unsupportable because of overwhelming contradictory evidence should nonetheless result in a full investigation and potential imposition of provisional remedies is directly contrary to Congress' intent, as above indicated, of eliminating "unnecessary and costly investigations" and the "impediment to trade" that would reside in an unwarranted imposition of provisional remedies. Considering and weighing, under ITC's guidelines, all evidence gathered within the 45 days available for conducting a preliminary investigation, on the other hand, effectuates that legislative intent.

### VI. Judicial Reviewability

Lastly, it should be remembered that ITC's negative preliminary determinations are reviewable in the Court of International Trade. 19 U.S.C. § 1516a(a)(1)(A)(iii). Whether the court might find it more difficult to overturn a negative preliminary determination when ITC had weighed conflicting evidence cannot be a factor in evaluating the permissibility of ITC's method of determining the presence or absence of a "reasonable indication" of injury or threat of injury. If ITC's negative determination, however reached, was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", 19 U.S.C. § 1516a(b)(1)(A), the court should overturn it. If ITC's negative determination cannot be held defective on any of those grounds, the court should not overturn it.

Indeed, that Congress intended application of a narrow judicial review standard is made clear in its assertion that "traditional administrative law principles" be applied when reviewing preliminary determinations in which it "has entrusted the decision-making authority in a specialized, complex economic situation to [ITA and ITC]. Thus, review ... would be to ascertain whether there was a rational basis in fact for the determination...." S.Rep. No. 249, *supra*, at 252, *reprinted in* 1979 U.S.Code Cong. & Ad.News at 638.

## CONCLUSION

ITC's method of proceeding in applying the statutory reasonable indication standard does not contravene but accords with clearly discernible legislative intent and is sufficiently reasonable. To the extent that *Republic Steel* and its progeny suggest otherwise, those decisions cannot stand. Accordingly, the case is remanded to the Court of International Trade with instructions to vacate the certified order.

**REMANDED WITH INSTRUCTIONS TO VACATE.**