**CHEMICAL PRODUCTS
CORPORATION,
Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**Court No. 84–11–01541.**

United States Court of
International Trade.

Nov. 6, 1986.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., Dept. of Justice (A. David Lafer), Washington, D.C., for defendant.

Gibson, Dunn & Crutcher (Joseph H. Price and Robert M. Kruger), Washington, D.C., for plaintiff.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge.

Chemical Products Corporation (CPC), a domestic producer of barium chloride, challenges a final determination by the United States Department of Commerce, International Trade Administration (Commerce) of sales at less than fair value of barium chloride from the People's Republic of China (PRC). *Barium Chloride from the People's Republic of China* (Final), 49 Fed. Reg. 33916 (1984). The Court holds that Commerce's valuation of a liquid brine solution with a high calcium chloride content, based solely on its transportation cost, and Commerce's allocation of factors of production to hydrogen sulphide gas, are not supported by substantial evidence in the record or in accordance with law.

## I. BACKGROUND

Commerce determined that barium chloride from the PRC is being sold in the United States at a less than fair value margin of 14.5 percent. 49 Fed.Reg. 33916 (1984). Plaintiff seeks review of Commerce's determination pursuant to section 516A(a)(2)(A) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(A) (1982 & Supp. II 1984). The Court has jurisdiction under 28 U.S.C. § 1581(c) (1982).

The question presented is whether the following determinations by Commerce are supported by substantial evidence and in accordance with law:

1) The decision to calculate the value of a liquid brine solution, which is used in the production of barium chloride, solely on the basis of its transportation cost for the reason that it was obtained free of charge in the PRC;

2) The valuation of the energy input at one barium chloride plant based on the price in Thailand of coal rather than the price of natural gas, the energy source used by the plant in the PRC;

3) The valuation of inland river freight charges based on Brazilian freight rates rather than those prevailing in Thailand;

4) The allocation of factors of production between barium chloride and hydrogen sulfide gas on a quantity basis rather than on the value of the respective products; and

5) The use of the minimum eight percent profit factor in calculating foreign market value under 19 U.S.C. § 1677b(e)(1)(B)(ii) and 19 C.F.R. § 353.6(a)(2).

## II. DISCUSSION

### 1. The Calcium Chloride Input

■ The PRC has a state-controlled economy, and Commerce used constructed value under 19 U.S.C. § 1677b(c)(2) (1982) to determine the foreign market value of barium chloride based on the value of factors of production in Thailand. 49 Fed. Reg. at 33917. 19 U.S.C. § 1677b(e)(1)(A) states in part that "the constructed value of imported merchandise shall be the sum of ... the cost of materials ... and of fabrication or other processing of any kind employed in producing such or similar merchandise...." The regulation adopted by Commerce to implement the statute states in part:

*the constructed value of such or similar merchandise may be determined from the costs of specific objective components or factors of production incurred in producing the merchandise in question, including, but not limited to, hours of labor required, quantities of raw materials employed, and amounts*

of energy consumed, if such information is obtained from the producer of the merchandise in the state-controlled-economy country under investigation, and verification of such information in the state-controlled-economy country, is concluded to the satisfaction of the Secretary. *Such components or factors shall be valued and such values verified in a non-state-controlled-economy country* determined to be reasonably comparable in economic development to the state-controlled-economy country under investigation.

19 C.F.R. § 353.8(c) (1984) (emphasis added).

Calcium chloride is a factor of production used in producing barium chloride at one of the plants investigated by Commerce. R.Doc. 88, at 3. The plant's source of calcium chloride is salt brine liquid which it receives from three salt factories at no charge. R.Doc. 116, at 5. In its preliminary determination, Commerce calculated the value of the calcium chloride input at 450 baht per metric ton, based on the average price of a calcium chloride solution in Thailand. 49 Fed.Reg. 13728 (1984).

In its final determination, Commerce determined that constructed foreign value should not include an amount representing the value of calcium chloride, based on the circumstance that the plant's source of calcium chloride is brine which it receives free of charge. Commerce stated:

We have valued this factor by determining the weighted-average distance between the Zhangjiaba plant and its brine sources and then determining freight costs in Thailand for transporting brine such a distance.

49 Fed.Reg. at 33919.

Plaintiff argues that Commerce violated the statute and regulation requiring that factors of production be calculated based on their value in a surrogate country. Plaintiff says that by considering circumstances prevailing in the state-controlled economy, *i.e.* the fact that PRC brine is supplied "free of charge", Commerce unlawfully accepted the PRC value or cost of calcium chloride rather than that of the surrogate in determining the value to attribute to that factor of production.

In determining that the PRC is a state-controlled economy for the purpose of this investigation, Commerce considered that the setting of prices and the establishment of output quotas reveal state intervention in the economy of the PRC. 49 Fed.Reg. at 33917; *see Chloropicrin from the People's Republic of China,* 49 Fed.Reg. 5982, 5983 (1984). Under such circumstances 19 U.S.C. § 1677b(c)(e) and 19 C.F.R. § 353.8 preclude Commerce from determining in the home market economy the costs and expenses incurred by the PRC barium chloride industry. *See ICC Industries, Inc. v. United States,* 10 CIT ——, 632 F.Supp. 36, 39 (1986).

Commerce's failure to calculate the value of calcium chloride based on its value in Thailand does not comport with the constructed value provisions of the statute or the regulation, neither of which allows Commerce to avoid calculating the value of a factor of production in a surrogate country based on circumstances peculiar to the state-controlled economy. Deviation from the statutory and regulatory framework when a factor of production is deemed to be available free of charge in the state-controlled economy impermissably invites the dangers that the state-controlled economy provisions were designed to avoid. *See Carbon Steel Wire Rod From Poland: Final Determination of Sales at Less Than Fair Value,* 49 Fed.Reg. 29434 (use of state-controlled-economy prices to determine foreign market value improper under the statute as a result of state interference in the marketplace).

Defendant's argument that calcium chloride is not identical to salt brine liquid with a high calcium chloride content does not justify Commerce's failure to calculate the Thai value of a raw material input used by a PRC plant in the manufacture of barium chloride. Nor is Commerce's failure to determine the Thai value of the input justified by its characterization of brine liquid solution as a "waste product". This Court recently upheld Commerce's finding that

hydrogen sulfide gas is not a waste product since it can be, and is, used in certain plants as a raw material input in the production of sulfur and sodium thiosulfate. *Chemical Products Corp. v. United States,* 10 CIT ——, ——, 645 F.Supp. 289, 297 (1986). It follows that the brine liquid solution, which is beneficially applied in the production of barium chloride, is likewise not a waste product, and must be valued as an input not only on the basis of its transportation cost.

Defendant also argues that the allocation of a zero value to the brine liquid was correct since "it would be just as valueless in any country (be it a non-state-controlled economy country or a state-controlled economy country), since any salt producer would be more than willing to give it away rather than incur expenses in disposing of the waste." Brief for defendant at 7. This argument suggests that the value of brine liquid with a high calcium chloride content would be zero if Commerce had ascertained its value in Thailand. The Court cannot accept this conclusion, however, since the record contains no evidence that salt brine containing calcium chloride is a commodity having a zero value in Thailand. *See* Transcript of Oral Argument at 32. The Court holds that Commerce's valuation of calcium chloride based solely upon its transportation cost valued in Thailand is not supported by substantial evidence or in accordance with law.

## 2. The Energy Input

■ One of the two barium chloride plants in the PRC investigated by Commerce uses coal as an energy source, while the other uses natural gas. Commerce valued the energy component of both plants based on the value of coal in Thailand. The final determination states:

> Natural gas in Thailand is in short supply and is therefore sold to only two end users by the Petroleum Authority of Thailand. As a practical matter, natural gas is not available to industrial users in Thailand. We have therefore valued the PRC factor for natural gas by valuing in Thailand an amount of coal with the same calorific value (kilocalories) as the PRC factor for natural gas.

49 Fed.Reg. at 33918.

Plaintiff says that Commerce violated its regulation by not using the price for Thai natural gas since 19 C.F.R. § 353.8(c) requires that constructed value be computed "from the costs of specific objective components or factors of production incurred in producing the merchandise in question" valued and verified in the surrogate country. According to plaintiff:

> [W]here, as in this case, a specific price is available in the surrogate country for the actual factor or input used in the non-market-economy country, *i.e.,* natural gas, Commerce may not, consistent with its own regulations, disregard that price.

Brief for plaintiff at 14.

The record shows that natural gas prices and supplies are controlled by the government in Thailand. R.Doc. 35. The record also shows that natural gas in Thailand is not freely available but is sold only to two commercial users. The United States Embassy in Bangkok reported that:

> The Petroleum Authority of Thailand currently sells natural gas to two end-users (the Electricity Generating Authority of Thailand and Siam Cement) at dols 4.10 per million BTU. As a practical matter, however, because of shortfalls in production of natural gas from Thailand's off-shore drilling reserves, supplies of natural gas are not available to industrial users....

R.Doc. 44. Since natural gas is, with few exceptions, not available to industrial users in Thailand, it was not unreasonable for Commerce to seek an alternative to Thai natural gas prices as a means of valuing the energy factor of production of the plant in the PRC using natural gas as its energy source.

Commerce has broad discretion in administering the anti-dumping law. *Smith-Corona Group v. United States,* 713 F.2d 1568, 1571 (Fed.Cir.1983). The Court must also accord great deference to Commerce's

interpretation of its own regulations. *See American Lamb Co. v. United States,* 785 F.2d 994 (Fed.Cir.1986); *Chemical Products Corp. v. United States,* 10 CIT ——, ——, 645 F.Supp. 289, 291 (1986). Commerce was required by its regulation to ascertain and value in a surrogate country the "amounts of energy consumed" in the production of barium chloride in the PRC. 19 C.F.R. § 353.8(c) (1984). Under the circumstances of this case, the Court holds that Commerce's determination of the value of the energy consumed by the plant in the PRC using natural gas, based on the price in Thailand of an amount of coal with the same calorific value, is supported by substantial evidence and in accordance with law.

### 3. Inland Freight Charges

■ In constructing the foreign market value of barium chloride from the PRC, one of the factors Commerce was required to value was the cost incurred for inland freight transportation. The total inland distance in the PRC for which Commerce needed to value freight costs was 3,235 kilometers. The longest river freight haul in Thailand, however, is 130 kilometers. The Commerce case analyst stated:

> Since the per kilometer charge decreases as the distance increases, it would not be realistic to calculate a charge for the 3,235 kilometer journey in the PRC based on a 130 kilometer journey in Thailand. We therefore sought information concerning freight charges on other major river systems in non-state-controlled economy countries.

R.Doc. 133. Commerce consequently used Brazilian rates to value the charge for inland freight transportation based on prevailing rates for large shipments of chemicals on the Amazon River.

Plaintiff says that 19 C.F.R. § 353.8(c) contemplates the use by Commerce of a single surrogate country in which factors of production and all other costs must be valued. It points out that in response to its argument that the cost of a hydrochloric acid input be valued based on the price prevailing in India, Commerce stated:

> We also find it administratively infeasible to move back and forth around the world valuing factors of production. We have determined, pursuant to section 353.8(c) of the regulations, that Thailand and the PRC are at comparable stages of economic development. We therefore have valued all of the factors of production in Thailand without reference to relative values in other countries such as India.

49 Fed.Reg. at 33919.

The Court finds that Commerce's response to plaintiff's comment does not constitute an interpretation of section 353.8(c) by that agency requiring that all factors of production as well as all other related charges be valued based on data from a single surrogate country. Nor does plaintiff argue that such a policy would be desirable where a comparison of specific factors would lead to a skewed or absurd result. Rather plaintiff contends that Commerce was required by the regulation to attempt to use Thai rates, suitably adjusted, if necessary, recognizing that those rates are for a short distance. *See* Transcript of Oral Argument at 8–10.

The regulation is silent concerning whether Commerce may use data from a country other than its designated surrogate when Commerce finds that a comparison of one element of foreign market value in the surrogate would yield an unrealistic result. But since the Court must give "tremendous deference" to the agency administering the antidumping law, *Smith-Corona Group v. United States, supra,* at 1582, the Court cannot conclude that Commerce's use of Brazilian freight rates is violative of the statute or based on an impermissible interpretation of its regulation.

Since Commerce's explanation of why Brazilian and not Thai freight rates were used is reasonable and supported by evidence in the record, the Court holds that Commerce's determination is supported by substantial evidence and in accordance with law.

#### 4. Allocation of Factors of Production

█ Commerce determined that the barium chloride production process yields an amount of hydrogen sulfide gas (HSG). Commerce therefore allocated a portion of the factors of production to HSG, which lowered the foreign market value that would have resulted if all factors of production had been allocated to barium chloride. Commerce based its allocation on the quantity of each chemical yielded by the production process without regard to the respective values of the products.

Commerce's determination that HSG has value is supported by substantial evidence since the record shows that it is used to produce sodium hydrosulfide. R.Doc. 31. The Court recently held, however, that Commerce may not allocate factors of production between two products on a quantity basis if the products have significantly different values. *Chemical Products Corp. v. United States*, 10 CIT ——, —— – ——, 645 F.Supp. 289, 297 (1986). Commerce must, therefore, find a reasonable means of determining the market value of HSG or the value of HSG to the producing plant so that the record shows the respective values of barium chloride and HSG. If the values are not equal, Commerce must adjust its allocation of factors of production to reflect the difference in the value of the products.

#### 5. Profitability

█ Commerce is required to include in its calculation of constructed foreign market value an amount for profit not less than eight percent of the sum of general expenses and cost under 19 U.S.C. § 1677b(e)(1)(B) (1982 & Supp. II 1984) and 19 C.F.R. § 353.6(a) (1984). To determine an appropriate profitability figure to include in its calculations, Commerce surveyed four Thai companies which showed average profits during 1983 of 7.85%. Commerce therefore used the minimum eight percent profit figure. The profitability figures used in Commerce's survey were the same as those used by Commerce to determine profitability in an investigation

of the PRC's barium carbonate industry. The Court upheld Commerce's use of those figures in *Chemical Products Corp. v. United States*, 10 CIT ——, 645 F.Supp. 289 (1986). For the reasons set forth in that opinion, the Court holds that Commerce's use of the minimum eight percent profit factor in this case is supported by substantial evidence and in accordance with law.

### III. CONCLUSION

The action is remanded for Commerce to redetermine the value of the calcium chloride factor of production and to make any necessary adjustments to the allocation of factors of production between barium chloride and HSG in accordance with this opinion. Commerce shall file with the Court within 45 days a supplemental record explaining its redetermination. Plaintiff shall file any comments on the results of the remand within 15 days after the filing of Commerce's redetermination, and defendant shall respond within 10 days after the filing of plaintiff's comments.

So ordered.