991 F.2d 809
 15 ITRD 1120
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
THE TORRINGTON COMPANY, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee,
and
Magyar Gordulocsapagy Muvek, Impexmetal, Fabryka Lozysk
Tocznych-Kielce and Fabryka Lozysk
Tocznych-Krasnik, Defendants/Cross-Appellants,
and
NTN Bearing Corporation of America, American NTN Bearing
Manufacturing Corporation, NTN Bearing Corporation
of Canada and Tung Pei Industrial Co., Ltd.,
Fag Bearings, Ltd., Fag Austria Walzlager, Rolamentos Fag
Ltda., Sammi Precision Industries Co. and Fag
Bearings Corporation,
SKF USA, Inc., SKF Argentina S.A., SKF Steyr Ges. M.B.H.,
SKF Do Brazil Ltda. and SKF Industrias Mexicanas,
S.A. De C.V.
Korea Machinery Co., Ltd. and Golden Bell U.S.A., Co., Inc.
Emerson Power Transmission Co., Defendants-Appellees,
and
Peer Bearing Company, Defendant.
 Nos. 92-1383, 92-1392.
 United States Court of Appeals, Federal Circuit.
 March 5, 1993.
 
 Before MICHEL, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 The Torrington Company (Torrington) appeals the decision of the Court of International Trade which upheld the International Trade Commission's (ITC's) negative preliminary injury determination concerning imports of ball bearings from 14 countries. The Torrington Co. v. United States, No. 91-05-00355, (Ct.Int'l Trade Apr. 3, 1992). Because the ITC's conclusion that there was no reasonable indication of material injury or threat of material injury to the domestic industry is not arbitrary and capricious, we affirm.
 
 DISCUSSION
 
 2
 In reviewing the ITC's negative preliminary injury determination, the Court of International Trade was governed by the standard of review set forth in 19 U.S.C. § 1516a(b)(1) (1988), which provides that the Court of International Trade "shall hold unlawful any determination, finding, or conclusion found--(A) ... to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To determine whether the Court of International Trade's conclusion that the ITC's determination was not arbitrary and capricious is correct, this court must apply anew the statute's standard of review to the agency's determination. Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556, 1559 n. 10, 2 Fed.Cir. (T) 130, 133 n. 10 (Fed.Cir.1984); see also Matsushita Elec. Indus. Co. v. United States, 929 F.2d 1577, 1578 (Fed.Cir.1991) (applying de novo standard to Court of International Trade decision). Therefore, we must affirm the Court of International Trade unless we conclude that the ITC's determination was arbitrary and capricious.
 
 
 3
 We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (1988).
 
 
 4
 Torrington's principal argument on appeal is that the ITC's determination was arbitrary and capricious because the ITC based its decision on conflicting evidence. Torrington asserts that the ITC thereby failed to comply with the statutory requirement that a negative preliminary injury determination (and thus a termination of the investigation) be entered only if there is no "reasonable indication" that the domestic industry is materially injured or threatened with material injury. See 19 U.S.C. § 1673b(a) (1988).
 
 
 5
 This court interpreted the "reasonable indication" standard in American Lamb Co. v. United States, 785 F.2d 994, 4 Fed.Cir. (T) 47 (Fed.Cir.1986). The court stated that the ITC's longstanding view that it can issue a negative determination only when "(1) the record as a whole contains clear and convincing evidence that there is no material injury or threat of such injury; and (2) no likelihood exists that contrary evidence will arise in a final investigation" was based on a permissible construction of the statute. Id. at 1001, 4 Fed.Cir. (T) at 55. Moreover, the court expressly held that the "ITC's weighing of evidence in complying with § 1673b(a) is in full accord with the intent of Congress." Id. at 1002, 4 Fed.Cir. (T) at 56.
 
 
 6
 Thus, the fact that the ITC weighed conflicting evidence alone is not enough to show that the ITC's determination was arbitrary and capricious. The question then becomes whether the ITC was arbitrary and capricious in determining that there was no "reasonable indication" of material injury or threat thereof in the face of the conflicting evidence.
 
 
 7
 The evidence before the ITC included questionnaire responses that the ITC received from United States producers and information Torrington submitted with its petition. The questionnaire responses "represented a substantial majority of domestic production, accounting for an estimated 74%, by quantity, of producers' total shipments of complete ground ball bearings in 1989 and for 68%, by value, of 1989 producers' total shipments of ball complete ground [sic] bearings and parts." Slip op. at 6. The information Torrington submitted included Census statistics, Federal Reserve statistics, and statistics compiled by the Antifriction Bearing Manufacturers Association (AFBMA).
 
 
 8
 The questionnaire data provided information on actual industry activity for the precise product at issue, the entire period of investigation (1988-1990), and all of the factors that the ITC was required to consider under 19 U.S.C. 1677(7)(C) (1988). Torrington's data, on the other hand, was deficient in several respects. First, the Census data was available for only the first two (1988, 1889) of the three years under investigation. Further, the data did not cover the precise "like product" involved in this case, and it did not address many of the factors that the ITC was required to consider. Finally, the statistics for the year 1990 attributed to the Federal Reserve and the AFBMA were not actually prepared by those institutions but instead were Torrington's extrapolations of the data from those two institutions. Therefore, the ITC was not arbitrary and capricious in concluding that the questionnaire data it gathered for the purpose of this investigation was the "best information available to it," as required by the statute, 19 U.S.C. § 1673b(a), or in relying more on that information than on Torrington's deficient data in making its determination.
 
 
 9
 Moreover, the questionnaire responses provided ample support for the ITC's determination that there was no reasonable indication of material injury or threat thereof. For example, during the period of review, profitability, prices, domestic shipments, employment, and compensation increased dramatically, and substantial investments were made. Thus, the ITC's determination was not arbitrary and capricious.
 
 
 10
 Torrington's assertion that the ITC made improper findings with respect to some factors (consumption and shipments) and assigned improper weight to others (profitability and inventories) is not persuasive. We note that Torrington's contrary allegations with respect thereto are suspect because of the unreliability of the data upon which it relies, as noted above. More importantly, however, even if we accepted Torrington's allegations as true, Torrington has still failed to show that the ITC acted arbitrarily and capriciously in weighing these factors against all the others which show positive indications. As the Court of International Trade correctly noted, "[t]he statutes direct the [ITC] to investigate a variety of factors in determining the condition of the domestic industry, 19 U.S.C. § 1677(7)(C)(iii), and provide [that] 'the presence or absence of any factor ... shall not necessarily give decisive guidance with respect to the determination' of material injury. 19 U.S.C. § 1677(7)(E)(ii) (1988)." Slip op. at 13. Torrington's arguments simply challenge the ITC's weighing of the evidence. Under the arbitrary and capricious standard, we cannot second-guess the agency, but must defer if it had a "rational basis" for reaching the conclusion it did. American Lamb, 785 F.2d at 1004, 4 Fed.Cir. (T) at 59.
 
 
 11
 Torrington alternatively argues that "at a minimum" this court should remand the action to the ITC for a fuller explanation of how the ITC reached its negative determination. Torrington cited no support for its assertion that the ITC must discuss all of the conflicting evidence. Although the statute requires the ITC to discuss each of the factors it considers, 19 U.S.C. § 1677(7)(B) (1988), it does not require a discussion of all of the evidence. Torrington has made no assertion that the ITC did not discuss each of the factors.
 
 
 12
 Because we affirm the Court of International Trade, we need not reach the issues raised in the cross-appeal. Accordingly, the cross-appeal is dismissed as moot. Likewise, because we found it unnecessary to rely on the material which was the subject of the motion to strike in disposing of this appeal, the motion is dismissed as moot.