Slip Op. 02-75

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| USINOR INDUSTEEL, S.A., DUFERCO CLABECQ, S.A., AG der DILLINGER HÜTTENWERKE, SALZGITTER AG STAHL und TECHNOLOGIE, and THYSSEN KRUPP STAHL AG, | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Consolidated Court No. 01-00006 |
| THE UNITED STATES, | : : : | |
| Defendant, | : : | |
| and | : : | |
| BETHLEHEM STEEL CORPORATION and U.S. STEEL GROUP, A UNIT OF USX CORP., | : : : | |
| Defendant-Intervenors. | : : : | |

[ITC motion to certify for interlocutory appeal denied.]

Dated: July 30, 2002

Barnes, Richardson, & Colburn (Gunter von Conrad and Stephen W. Brophy) for plaintiff Usinor Industeel, SA.

White and Case LLP (Walter J. Spak, Lyle B. Vander Schaaf, Joseph H. Heckendorn, and Caleb W. Sullivan) for plaintiff Duferco Clabecq, S.A.

DeKieffer and Horgan (J. Kevin Horgan and Marc E. Montalbine) for plaintiffs AG der Dillinger Hüttenwerke, Salzgitter AG Stahl und Technologie and Thyssen Krupp Stahl AG.

Lyn M. Schlitt, General Counsel, James M. Lyons, Deputy General Counsel, United States International Trade Commission (Rhonda M. Hughes), for defendants.

Dewey Ballantine LLP (Alan Wm. Wolff, Kevin M. Dempsey, and Rory F. Quirk) and Skadden, Arps, Slate, Meagher & Flom LLP (Robert E. Lighthizer, John J. Mangan, and James C. Hecht) for defendant-intervenors Bethlehem Steel Corporation and U.S. Steel Group, a unit of USX Corporation.

**OPINION**

**RESTANI, Judge:** This matter is before the court on Defendant's motion to amend and certify the court's April 29, 2002 order for interlocutory appeal and for stay of the proceeding pending appeal. Defendant, the U.S. International Trade Commission ("Commission" or "ITC") argues that the court's conclusion regarding the definition of "likely" for injury determinations in sunset reviews was incorrect and involves controlling questions of law so as to warrant immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(1). Defendant's motion is denied.

Interlocutory appeals are a departure from the well-established final judgment rule and are reserved for exceptional cases. See, e.g., Marsuda-Rodgers Int'l v. United States, 13 CIT 886, 888 (1989); Washington Int'l Ins. Co. v. United States, 12 CIT 259, 260 (1988). 28 U.S.C. § 1292(d)(1) provides that the deciding court may certify the case for immediate appeal where (1) a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion; and (2) an immediate appeal from that order may materially advance the ultimate termination of the litigation.

The Commission argues that the court erred in finding that the term "likely" in 19 U.S.C. § 1675a should be given its ordinary meaning.[1] Usinor Industeel, SA v. United States, Slip-Op.

---

[1] The interpretation of "likely" directly affects not only the Commission's ultimate injury determination but its intermediate findings concerning, inter alia, competition overlap, cumulation, and price effects. See 19 U.S.C. § 1675a(a)(1) (likelihood of injury upon

02-39 (Ct. Int'l Trade April 29, 2002). Repeating its previous position, the Commission again argues that the Statement of Administrative Action, ("SAA") accompanying H.R.Rep. No. 103-826(I), at 883, reprinted in 1994 U.S.C.C.A.N. 4040, 4212, contains an alternative definition and should control. With no support, the Commission argues that any order requiring it to apply the ordinary meaning will disrupt all sunset reviews and, ultimately, diminish the significance of the SAA.

The court does not, as the Commission suggests, dispute that the SAA is the authoritative expression of the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994) ("URAA"). See NTN Bearing Corp. v. United States, 155 F.Supp.2d 715, 721 (2001). There is no question that the SAA is the authoritative guide in interpreting the URAA. Allied Tube & Conduit Corp. v. United States, 127 F.Supp.2d 207, 216-17 n.2 (2000). If a statutory term or phrase were ambiguous and in need of interpretation, the court would look to the SAA first and foremost for direction. See Taiwan Semiconductor Industry Ass'n v. United States, 23 CIT 410, 413 n.6, 59 F.Supp.2d 1324, 1328 n.6 (1999). Apart from its statutory approval in 19 U.S.C. § 3512(d), in practical terms the SAA is more compelling than ordinary statutory legislative history. Because unfair trade laws are passed pursuant to fast track procedure with only an up or down vote, normally there is not the possibly conflicting and confused legislative history that often accompanies legislation as it evolves. The SAA is a more detailed and coherent expression of legislative intent.

---

revocation); § 1675a(a)(2) (volume); § 1675a(a)(3) (price effects); § 1675a(a)(4) (impact on domestic industry); and § 1675a(a)(7) (cumulation, competition overlap, discernible adverse impact).

The Commission argues, however, that, because 19 U.S.C. § 3512(d) provides that the SAA is the authoritative expression of the URAA, the SAA is an extension of the statute and, therefore, its alternative "definition" should be considered statutory and controlling.  The court does not read § 3512(d) to transform the SAA into a controlling "statutory" provision that can trump the actual statute.  Because the court determined that the undefined term "likely" as found in the statute itself is clear, the inquiry ends there.  Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).  Undefined terms in a statute are deemed to have their ordinary meaning.  Koyo Seiko Co. v. United States, 36 F.3d 1565, 1571 n.9 (Fed. Cir. 1994).[2]  The court need not resort to the SAA to interpret what the statute makes clear.[3]

---

[2] The Commission submits a variety of alternative definitions from various dictionaries and submits an argument that probable is different from likely.  Semantics aside, the dispute is whether the Commission based its determination on the mere possibility of dumped future subject imports.  In making its determination, the Commission relied heavily upon Plaintiff's excess capacity to determine that future volume, and therefore future harm, was likely.  Generally, excess capacity figures identify how much of a particular product a subject producer could possibly manufacture and, perhaps, export to the United States.

It is unclear what standard was actually used here because the Commission and its counsel refused to explain further.   It is important to note that, from the beginning, Plaintiffs argued that future imports were unlikely and, in support, inter alia, presented considerable evidence to the Commission identifying significant changes in the European Community since the initial investigation.  Rather than respond, the Commission summarily declared that it was "unconvinced" and found that future imports were likely.  On remand, the court required the Commission to explain why significant import volume was likely, not simply possible, in light of Plaintiffs' argument.

[3] The court's adoption of the ordinary meaning of likely is consistent with other Federal Circuit decisions.  For example, in American Lamb Co. v. United States, the court explained that the statutory phrase "reasonable indication" meant more than a mere possibility.  785 F.2d 994, 1001 (Fed. Cir. 1986).  A "reasonable indication" of injury is a lesser standard than likely injury.  If "possibility" is insufficient for the former, it is certainly insufficient for the latter.  The lesser standard also makes clear that Congress knows how to write different standards into the unfair trade laws.

The Commission incorrectly cites to three cases for the proposition that the Federal

Circuit has used the SAA to construe statutory provisions "even when the court had found the

statutory language to be unambiguous." Def. Br. at 4. SKF USA, Inc. v. United States, 263 F.3d

1369 (Fed. Cir. 2001);[4] Micron Technology, Inc. v. United States, 243 F.3d 1301, 1305 (Fed.

Cir. 2001);[5] AK Steel Corp. v. United States, 226 F.3d 1361, 1366 (Fed. Cir. 2000). In all three,

the court merely reaffirmed the established principle that the SAA is the authoritative expression

interpreting the URAA. In fact, the court's opinion here is entirely consistent with AK Steel:

> When a word is undefined in a statute, the agency and the reviewing court normally give the undefined term its ordinary meaning. See Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). . . . Since there can be no real ambiguity about

---

[4] The Federal Circuit itself recognized that SKF USA Inc. was factually unique:

> In SKF USA Inc. v. United States, 263 F.3d 1369, 1379-80 (Fed.Cir.2001), we resolved an apparent anomaly in the antidumping statute where the definition of a key statutory term appeared to apply solely to one part of the statute, in which the term did not even appear. Absent our interpretation applying that definition to the part of the statute in which the term actually appeared, the definition was meaningless.

FAG Italia S.p.A. v. United States, 291 F.3d 806, 817 (Fed. Cir. 2002).

[5] In Micron, the court did not determine that the term "level of trade" was unambiguous yet still look to the SAA for meaning. Rather, the court was explaining its understanding in the absence of a definition in either the statute or the SAA.

> Neither the statute nor the [SAA] defines the phrase "same level of trade." However, we understand the term to mean comparable marketing stages in the home and United States markets, e.g., a comparison of wholesale sales in Korea to wholesale sales in the United States. See 19 C.F.R. § 351.412(c)(2) ("The Secretary will determine that sales are made at different levels of trade if they are made at different marketing stages (or their equivalent).").

Micron, 243 F.3d at 1305.

these terms, contrary to the assertions of the appellees, we are not required to do any analysis under the second part of the Chevron test."

226 F.3d at 1371.

Even if the SAA were controlling, the SAA does not contain a definition of "likely". Instead, the SAA attempts to provide some guidance for the inherently prospective sunset review analysis:

> The determination called for in these types of reviews is inherently predictive and speculative. There may be more than one likely outcome following revocation or termination. The possibility of other likely outcomes does not mean that a determination that revocation or termination is likely to lead to continuation or recurrence of dumping or countervailable subsidies, or injury, is erroneous, as long as the determination of likelihood of continuation or recurrence is reasonable in light of the facts of the case.

SAA at 883. While the Commission cites to this paragraph ad nauseam as the "statutorily-endorsed" definition, the context of the excerpt does not suggest that it was intended as a definition but rather as a caveat against any presumption that the facts of a particular case can support only one outcome.[6] The Commission adamancy does not make a significant legal argument out of such nebulous matter.

Although the court finds that there is no basis for the ITC's difference of opinion and need not reach the second ground, intervention of the court of appeals at this stage will not advance the termination of this litigation. Quite apart from the lack of merits of the legal issue, it may ultimately be of no consequence here. The Commissioners might reach the same result under the proper standard. Further, delaying finalization of reviews is counterproduction. Staff changes, commissioners change and lack of familiarity is not likely to lead to better results.

---

[6] The court does not dispute that the Commission may evaluate evidence as it see fit or that different conclusions can be drawn from the same evidence.

## <u>Conclusion</u>

The court finds that, because the provision at issue is clear, there is no substantial ground for a difference of opinion and further that certification will not advance disposition of this matter.  Defendant's motion to certify for interlocutory appeal is hereby denied; thus stay is not warranted.

_____

Jane A. Restani
JUDGE

Dated:  New York, New York

This 30th day of July, 2002