**SILVER REED AMERICA, INC. and Silver Seiko, Ltd., Plaintiffs,**

**Brother International Corp. and Brother Industries, Ltd., Plaintiff–Intervenors,**

v.

**UNITED STATES of America, Defendant,**

**Smith Corona Corporation (f/k/a Consumer Products Division, SCM Corporation), Defendant–Intervenor,**

and

**SMITH CORONA CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

Silver Reed America, Inc., Silver Seiko, Ltd., Brother International Corp., Brother Industries, Ltd., and Nakajima All Co., Ltd., Defendant–Intervenors.

Court No. 83–10–01522.

United States Court of International Trade.

March 18, 1988.

Willkie Farr & Gallagher (Christopher A. Dunn and Zygmunt Jablonski, Washington, D.C.,) for Silver Reed America, Inc. and Silver Seiko, Ltd.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart and James R. Cannon, Jr., Washington, D.C., Robert E. Walton, New Canaan, Conn., Gen. Counsel, for Smith Corona Corp.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., Dept. of Justice, Washington, D.C., Velta A. Melnbrencis, New York City, for the U.S.; Lisa B. Koteen, Acting Sr. Counsel for Policy Office of Deputy Chief Counsel for Import Admin., Dept. of Commerce, Washington, D.C., of counsel.

## MEMORANDUM OPINION AND ORDER

NEWMAN, Senior Judge:

My memorandum opinion and order of January 12, 1988, 679 F.Supp. 12, (Slip Op. 88–5) reversed in part and remanded for further proceedings the final determination of the Department of Commerce, International Trade Administration ("ITA"), entitled *Portable Electric Typewriters from Japan; Final Results of Administrative Review of Antidumping Order*, 48 Fed. Reg. 40761 (September 9, 1983). I found, *inter alia*, that ITA erred in double-counting certain selling expenses which were deducted from the exporter's sales price ("ESP") for Silver's typewriters. 679 F.Supp. at 17, 21. Moreover, Slip Op. 88–5 determined that ITA erred in deducting from ESP an imputed interest expense for "time on the water" pursuant to 19 U.S.C. § 1677a(e)(2) since such expense was not incurred "in the United States." *Id.* at 16.

Here, plaintiffs move for clarification of the portion of Slip Op. 88–5 that pertains to the double-counting issue and seek an order requiring ITA on remand to correct *all* double-counting of selling expenses and not merely the double-counting error that occurred in six invoices identified by defendant.

Defendant and Smith Corona Corporation ("intervenor") oppose plaintiffs' motion and seek an order limiting ITA's review of double-counting errors on remand to those which concededly occurred in the six invoices.

Intervenor moves for a rehearing of the issue pertaining to the imputed interest expense for "time on the water." Essentially, intervenor and defendant contend that ITA may deduct all direct and indirect selling expenses related to United States sales regardless of the geographical location of the incurrence of the expense.

Plaintiffs' motion for clarification and intervenor's motion for rehearing are granted and *sua sponte* are hereby consolidated for purposes of the within memorandum opinion and order.

## I.

### PLAINTIFFS' MOTION FOR CLARIFICATION THE DOUBLE–COUNTING ISSUE

It is apparent from plaintiffs' motion and the responses thereto by defendant and intervenor that the parties have a reasonable disagreement concerning my remand order pertaining to the double-counting issue. Accordingly, in the interest of ITA's properly conducting the remand proceedings and expediting the resolution of the double-counting errors, I will further elaborate on the double-counting issue.

Slip Op. 88–5, noted that plaintiffs challenged "the double-counting of actual interest expenses for inventory financing in addition to the imputed inventory financing expense for the time period the merchandise was in Silver Reed's inventory." *Id.* at 15. Therefore, "[i]n order to determine the accuracy of Silver's claim, Commerce attempted to reconstruct the data using the final printout, verification report, and questionnaire responses" (*defendant's memo in response to plaintiffs' rule 56.1 motion at 6*).

Defendant admits that ITA erred in double-counting selling expenses in six invoices, but solely with respect to the time period between Silver Reed's sale of the goods to the unrelated customer and Silver Reed's payment to Silver Seiko for those goods (*defendant's memo at 6–7*). Defendant requested a remand "[i]n order to reprogram the data, examine the calculations made for imputed direct and indirect selling expenses and to correct the errors previously made" (*Id.* at 7). Consequently, in 679 F.Supp. at 17, I "directed [ITA] to review the record and correct any errors in double-counting of selling expenses arising from imputation of such expenses."

Silver's motion for clarification of the foregoing portion of Slip Op. 88–5 posits that defendant should not limit its inquiry on remand to the six invoices defendant identified, but rather ITA should review the record and correct all errors in double-counting of selling expenses, including but not limited to, any erroneous double deduction of plaintiffs' actual and imputed inventory financing expenses.

Silver claims that in addition to imputing a presale inventory carrying expense, which was deducted from ESP, ITA also deducted Silver Reed's actual interest expenses incurred in financing its inventory. Silver insists the administrative record establishes that its actual interest expense incurred in connection with pre-sale inventory financing was deducted from ESP and thus ITA double-counted Silver Reed's inventory carrying expenses by also deducting imputed interest expenses. *Plaintiffs' brief in support of its rule 56.1 motion at 50–51.* Plaintiffs premise their double-counting claim on ITA's alleged verification that Silver Reed's actual interest expenses related solely to carrying inventory. *Id. at 51; ITA's first Silver Reed verification report, exh. 16D, A.R. 4038–46; A.R. 3799; plaintiffs' reply to defendant's and intervenor's opposition to plaintiffs' motion for clarification at 15, n. 10.* In that connection, plaintiffs stress that the administrative record shows that all loans obtained by Silver Reed were incurred very shortly after the date that Silver Reed's payment for purchase of merchandise from Silver Seiko was due. Intervenor, however, maintains that no double-counting of inventory financing costs occurred because the cost of holding inventory was paid for "by virtue of the extended payment terms between Silver Seiko and Silver Reed" (*intervenor's brief at 32*). The foregoing contention is denied by plaintiffs.

There is no dispute, that in principle, double-counting of adjustments to ESP is impermissible. In this case, ITA admittedly deducted from ESP imputed inventory carrying costs covering the period from the date of shipment of the merchandise from Japan to the date of Silver Reed's resale of the merchandise. Plaintiffs' assertion that ITA also deducted from ESP interest expenses actually incurred by Silver Reed to finance its inventory raises a serious question of fact that warrants further review by ITA.

Accordingly, it is hereby ordered that in addition to correcting the double-counting

error respecting the six invoices defendant previously identified, ITA is directed to review the pertinent portions of the administrative record to ascertain whether in fact any actual interest expenses incurred by Silver Reed for presale inventory financing were deducted from ESP. If after review of the record, ITA finds that a double-counting of presale inventory carry expenses occurred, as claimed by Silver, such error shall be corrected on remand.

Plaintiffs' application for permission to file a reply brief has raised no objection and the application is granted.

## II.

### INTERVENOR'S MOTION FOR REHEARING THE IMPUTED INTEREST EXPENSE FOR "TIME ON THE WATER"

As discussed in 679 F.Supp. at 15–17, in making adjustments to Silver's ESP, ITA deducted an imputed interest expense for the period from the date of shipment of the merchandise from Japan to the date of sale of the goods by Silver Reed to unrelated United States purchasers. Hence, this imputed presale inventory financing expense covered the time period during which the merchandise was in transit, *viz.*, "on the water." In 679 F.Supp. at 16, I agreed with Silver's contention in support of its rule 56.1 motion that the imputed interest expense for time on the water was improperly deducted by ITA from Silver's ESP since such expense was not incurred "in the United States" within the purview of 19 U.S.C. § 1677a(e)(2). Intervenor has moved for reconsideration of that ruling contending that the phrase "in the United States" does not limit the term "incurred," and in any event § 1677a(e)(2) was not intended to limit the deductability of selling expenses incurred by or on behalf of the exporter that are related to United States sales. After consideration of the more extensive briefing by the parties on the issue, I have concluded that while a literal reading of the statute might support Silver's position, nonetheless intervenor's and defendant's construction of the statute reflect

the Congressional intent in the ESP adjustment provided by § 1677a(e)(2).

As aptly observed in *Asahi Chemical Industry Company, Ltd. v. United States,* 4 CIT 120, 548 F.Supp 1261 (1982):

While it is true that "[t]he starting point in every case involving construction of a statute is the language itself," *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756 [95 S.Ct. 1917, 1935, 44 L.Ed.2d 539] (1975), nevertheless, as noted by the Supreme Court in *Lynch v. Overholser,* 369 U.S. 705 [82 S.Ct. 1063, 8 L.Ed.2d 211] (1962):

The decisions of this Court have repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, *e.g., Church of the Holy Trinity v. United States,* 143 U.S. 457, 459–462 [12 S.Ct. 511, 512–513, 36 L.Ed. 226 (1892) ]; *Markham v. Cabell,* 326 U.S. 404, 409 [66 S.Ct. 193, 195, 90 L.Ed. 165 (1945) ] * * *.

*Id.* at 710 [82 S.Ct. at 1067]. See also *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565 [100 S.Ct. 790, 796–797, 63 L.Ed.2d 22] (1980). Learned Hand observed in this same connection that:

[I]t is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.

*Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.), *aff'd,* 326 U.S. 404 [66 S.Ct. 193, 90 L.Ed. 165] (1945).

*See also United States Steelworkers of America v. Weber,* 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480, *reh'g denied,* 444 U.S. 889, 100 S.Ct. 194, 62 L.Ed. 2d 126 (1979); *Vivitar Corp. v. United States,* 8 CIT 109, 113–114, 593 F.Supp 420, 425–26 (1984), *aff'd* 3 CAFC 124, 761 F.2d 1552 (Fed.Cir.1985).

Fundamentally, too, a "reviewing court must accord substantial weight to an agency's interpretation of a statute it administers." *American Lamb Company v.*

*United States,* 785 F.2d 994, 1001 (Fed.Cir. 1986), citing *Zenith Radio Corporation v. United States,* 437 U.S. 443, 450–51, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978), and *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

Intervenor and defendant correctly observe that if selling expenses must be geographically incurred in the United States to be deductible from ESP, then dumping margins would be masked in those instances in which selling expenses incurred by or for the account of the exporter related to United States sales are absorbed by the parent companies abroad. Indeed, in its September 18, 1987 reply brief at 12, Silver conceded that if an expense is "incurred for U.S. sales," it is deductible from ESP, "including financial expenses, incurred by a respondent in the foreign market but attributable to U.S. sales."

An analysis of the entire statutory scheme for ESP adjustments in § 1677a demonstrates that many preimportation expenses related to United States sales must be deducted from ESP. ITA's imputed interest expense for "time on the water" represents an opportunity cost incurred by or on behalf of the exporter in connection with United States sales. If ITA were precluded from deducting this imputed selling expense from the ESP, the essential price comparison to determine the margin of dumping, if any, becomes distorted and contrary to the purpose of the dumping law to achieve a fair price comparison. *Brother Indus., Ltd. v. United States,* 3 CIT 125, 140–41, 540 F.Supp. 1341, 1357 (1982), *aff'd sub nom Smith–Corona Group, SCM Corp. v. United States,* 713 F.2d 1568 (Fed. Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). Unless all of the exporter's selling expenses related to United States sales are deducted from ESP, there cannot be an equitable price comparison in the two markets. Thus, in *Smith–Corona,* the Federal Circuit described the nature of the comparison as follows:

> Foreign market value and United States price represent prices in different markets affected by a variety of differences in the chain of commerce by which the merchandise reached the export or domestic market. Both values are subject to adjustment in an attempt to reconstruct the price at a specific, "common" point in the chain of commerce, so that value can be fairly compared on an equivalent basis.

713 F.2d at 1571–72. *See also Rhone Poulenc, S.A. v. United States,* 8 CIT 47, 68–70, 592 F.Supp 1318, 1336–37 (1984); *Zenith Radio Corp. v. United States,* 9 CIT 110, 116–119, 606 F.Supp. 695, 701–03 (1985).

In sum, the purpose of the antidumping statute is to create a comparison between foreign market value and United States price that is based on value at the same point in the chain of commerce. Failure to make a deduction from ESP to account for a selling expense (whether imputed or actual) before importation or "on the water" would impair the integrity of the price comparison since a value that includes the exporter's selling expenses incurred after shipment but before importation is not an estimate of the true f.o.b. origin price.

For the foregoing reasons, intervenor's motion for rehearing is granted. Slip Op. 88–5 is amended to hold that ITA correctly deducted an imputed interest expense covering the period that the merchandise was on the water, to the extent that there was no double deduction of presale inventory financing expenses, as claimed by Silver.

In the interest of expediting the remand proceedings pending before ITA, the two motions addressed herein were consolidated *sua sponte.* ITA's time for reporting the results of the remand to the court is extended to ninety days from the date of this order. Plaintiffs shall have thirty days thereafter in which to respond; defendant and intervenor shall have thirty days after receipt of plaintiffs' response to reply thereto.