TIMKEN CO., PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND NTN BEARING CORP. OF AMERICA, AMERICAN NTN BEARING MANUFACTURING CORP., AND NTN TOYO BEARING CO., LTD., KOYO SEIKO CO., LTD., KOYO CORP. OF U.S.A., DEFENDANT-INTERVENORS

Court No. 87-11-01082

(Dated November 5, 1990)

*Stewart and Stewart* (*Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr.* and *John M. Breen*); of counsel: *Scott A. Scherff*, Senior Corporate Counsel, The Timken Company, for plaintiff.

*Stuart M. Gerson*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Velta A. Melnbrencis*); of counsel: *Stephanie J. Mitchell*, Attorney-Advisor, Office of Chief Counsel for Import Administration, Department of Commerce, for defendant.

*Powell, Goldstein, Frazer & Murphy* (*Peter O. Suchman*); *Tanaka Ritger & Middleton* (*H. William Tanaka, Alice L. Mattice* and *John J. Kenkel*) for defendant-intervenor KOYO SEIKO COMPANY, LTD. and KOYO CORPORATION OF U.S.A.

*Barnes, Richardson & Colburn* (*Robert E. Burke, Donald J. Unger* and *J. Kevin Horgan*) for defendant-intervenor NTN BEARING CORPORATION OF AMERICA, AMERICAN NTN BEARING MANUFACTURING CORPORATION, and NTN TOYO BEARING COMPANY, LTD.

OPINION

TSOUCALAS, *Judge*: Once again this Court is called upon to review the conclusions of the Commerce Department, International Trade Ad-

ministration (ITA), in *Final Determination of Sales at Less Than Fair Value: Tapered Roller Bearings and Parts Thereof. Finished and Unfinished From Japan*, 52 Fed Reg. 30,700 (Aug 17, 1987), *amended*, 52 Fed. Reg. 47,955 (Dec. 17, 1987). On this occasion, the determination is challenged by the petitioners to the investigation, The Timken Company. Pursuant to Rule 56.1 of the rules of this Court, plaintiff moves for judgment on the agency record. Defendant as well as defendant-intervenors oppose plaintiff's motion.

## BACKGROUND

Insofar as this action is predicated upon the same set of circumstances that existed in *NTN Bearing Corp. of America, American NTN Bearing Mfg. Corp.. and NTN Toyo Bearing Co. v. United States* ("NTN"), 14 CIT 623, Slip Op. 90-88 (Sept. 7, 1990), familiarity with which is presumed, and given that the Court granted a stay of the remand ordered therein so that all related issues could be remanded together, this decision is to be considered in conjunction with the Court's opinion in that case.[1]

Plaintiff's allegations in the instant action are as follows: (1) the ITA's practice of proportionately allocating losses as well as profits to the "value added" to the tapered roller bearing ("TRB") components after importation unlawfully results in an undercollection of dumping duties; (2) 19 U.S.C. § 1677a(e)(2) (1982) required Commerce to deduct imputed financing expenses from the exporter's sales price ("ESP"); (3) the ITA failed to implement its stated methodology in selecting "most similar merchandise";[2] (4) the ITA's adjustment of TRB constructed values for differences in circumstances of sale is prohibited by 19 U.S.C. § 1677b(e); and (5) the ITA's failure to deduct resale profits from its ESP calculations was improper and contrary to law.

## DISCUSSION

The court's jurisdiction over this action is grounded upon 28 U.S.C. § 1581(b) (1982). Accordingly, the applicable standard of review is whether Commerce's determination is supported by substantial evidence and is otherwise in accordance with law. 19 U.S.C. § 1516a (b)(1)(B) (1982). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gold Star Co. v. United States*, 12 CIT 701, 708, 692 F. Supp. 1382, 1383-84 (1988), *aff'd sub nom., Samsung Elec. Co. v. United States*, 873 F.2d 1427 (1989).

Moreover, the party challenging Commerce's determination bears the burden of proving the agency's error. *Brookside Veneers. Ltd. v.*

---

[1] Refer to this Court's decision in *NTN*, for a comprehensive history of the circumstances surrounding these actions.

[2] The Court, however, does not address this allegation as it was subsequently withdrawn upon Commerce's explanation that plaintiff misinterpreted the computer printouts which indeed bore out that the stated methodology *was* applied to determine "most similar merchandise." *See Plaintiff's Reply Brief* at 16; *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment upon the Agency Record* ("Defendant's Memo") at 13-21.

*United States*, 847 F.2d 786, *cert. denied*, 109 S. Ct. 369 (1988). With this established, the Court turns to plaintiff's contentions.

I. *Loss allocation to "value added":*

When TRB parts are imported to be further processed into finished bearings by a party related to the foreign importer, Commerce calculates a U.S. price for the TRB based on exporter's sales price, pursuant to 19 U.S.C. § 1677a(c).[3] In order to accurately reflect the value of the imported component, 19 U.S.C. § 1677a(e)(3) provides for the adjustment of ESP by the amount, if any, of

> any increased value, including additional material and labor, resulting from a process of manufacture or assembly performed on the imported merchandise after the importation of the merchandise and before its sale to a person who is not the exporter of the merchandise.

Although not explicitly provided, Commerce has interpreted this provision to allow for the proportional allocation of any profits or losses attributable to the value added after importation. *See Final Determination of Sales at Less Than Fair Value; Color Picture Tubes From Japan*, 52 Fed. Reg. 44,171 (Nov. 18, 1987); *Final Determination of Sales at Less Than Fair value: Brass Sheet and Strip From Sweden*, 52 Fed. Reg. 819 (Jan. 9, 1987); *Cellular Mobile Telephones and Subassemblies From Japan; Final Determination of Sales at Less Than Fair Value*, 50 Fed. Reg. 45,447 (Oct. 31, 1985).

Commerce's proportional allocation of profits attributable to the "value added" was most recently examined by the court in *Sandvik AB v. United States*, 13 CIT 738, 721 F. Supp. 1322 (1989), *aff'd*, 904 F.2d 46 (1990). There the court determined Commerce's interpretation of the statutory mandate to be reasonable and in accordance with established agency practice. *Id.* at 1336.

Moreover, in *Sonco Steel Tube Div., Ferrum. Inc. v. United States*, 12 CIT 745, 694 F. Supp. 959 (1988), the court noted that since "the plain words of the statute and regulation neither expressly prohibit nor require ITA to consider profit as an element of value added," the decision to include a portion of profits in the value added was well within the ITA's discretion. *Id.* at 966.

Plaintiff, while seemingly in agreement with this prong of the ITA's practice, rejects what appears to this Court to be a natural corollary. Apparently, plaintiff would have the ITA proportionately deduct profits associated with the "value added" after importation (the effect of which would be to reduce ESP), while not attributing any portion of losses to the "value added" calculation (the effect of which would be to artificially depress ESP). Timken supports this argument by reasoning that the statute does not specifically provide for the proportional allocation of

---

[3] The aforementioned statute defines "exporter's sales prices as "the price at which merchandise is sold or agreed to be sold in the United States, before or after the time of importation, by or for the account of the exporter."

losses. The Court, however, is not persuaded by this partisan analysis since the statute neither provides for the allocation of profits.

The reasoning put forth by plaintiff produces such a patently unfair result that this Court cannot envision it to have been intended by Congress. In contrast, the Court finds that Commerce's practice of allocating losses to the "value added" is consistent with the statutory intent that dumping duties be imposed on the value of the imported merchandise only.

When, as in this case, the enabling statute is silent with respect to the matter at issue, a reviewing court must give reference to the agency's interpretation if it is a reasonable construction of the statute. *K Mart Corp. v. Cartier*, 486 U.S. 281 (1988). This is especially true where that interpretation represents established agency practice. *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, (1978). Accordingly, this portion of Commerce's determination is affirmed.

II. *Imputed financing expenses:*

As is often the case where related parties are involved, respondents NTN and KOYO transferred their products to their U.S. subsidiaries under artificially favorable credit terms. Because Commerce recognizes that this preferential treatment can potentially reduce the subsidiaries' financing expenses substantially, an imputed financing expense[4] is generally deducted from the ESP calculation pursuant to 19 U.S.C. § 1677a(e)(2), to achieve a more pragmatic calculation. This practice has been sanctioned by this court most recently in *Silver Reed America. Inc. v. United States*, 12 CIT 39, 679 F. Supp. 12 (1988).

Plaintiff maintains that such an adjustment to ESP was not made in the instant action and therefore seeks to have this mistake corrected. Commerce acknowledges that imputed financing expenses should have been deducted from ESP and alludes to inadvertent error for its failure to do so.

Defendant-intervenor KOYO, while in agreement that an imputed financing expense adjustment is required, maintains that the imputed amount should also be factored into the ESP offset. In addition, defendant-intervenor NTN alleges that its accounting practices already provide for these expenses to be reflected elsewhere as an indirect selling expense.

In light of the parties' consensus on this issue, the matter is remanded to the ITA, which shall correct the inadvertent omission of imputed financing charges from ESP calculations. Any adjustments to fair market value, flowing from an increase in the ESP offset, are to be made if warranted. Furthermore, as it is undisputed that the double counting of adjustments to ESP is impermissible, *Silver Reed America. Inc. v. United States*, 12 CIT 250, 252, 683 F. Supp. 1393, 1395 (1988), the ITA shall

---

[4] The financing expense must be imputed since the importers' accounting practices don't generally reflect the cost borne on behalf of their subsidiaries.

assure that actual financing expenses incurred by respondents on behalf of their U.S. subsidiaries are not otherwise reflected on their records.

III. *Adjustments to constructed value:*

During the course of its investigation in this case, the ITA was unable to determine a home market price or third country price for several TRB models involved. It therefore based fair market constructed value pursuant to 19 U.S.C. § 1677b(e)(1982) (Supp. V 1987).[5] Furthermore, Commerce

> made circumstances of sale adjustments to constructed value for differences in credit expenses. In addition, where the U.S. sales prices were calculated based on ESP, [they] made an offset for indirect selling expenses on the U.S. sales against home market indirect selling expenses, in accordance with § 353.15(c) of Commerce's regulations.

52 Fed. Reg. at 30,701.

Plaintiff now challenges these adjustments claiming that their effect is to "nullify the provision of the statute which requires the inclusion of general expenses in constructed value." *Plaintiff's Memorandum of Points and Authorities in Support of Motion for Judgment on the Agency Record* ("Plaintiff's Memo") at 34.

This court has on more than one occasion scrutinized the ITA's practice of adjusting constructed value for differences in circumstances of sale. *The Timken Co. v. United States*, 11 CIT 786, 673 F. Supp. 495 (1987);[6] *The Asociacion Colombiana de Exportadores de Flores v. United States ("Exportadores")*, 13 CIT 13, 704 F. Supp. 1114 (1989). In each instance, this practice has been deemed reasonable and in accordance with the statutory mandate.

Nevertheless, plaintiff maintains this case law is "not *res judicata* in this action, which involves different merchandise and a different record." *Plaintiff's Memo* at 34. The Court, however, is frankly baffled by

---

[5] 19 U.S.C. § 1677b provides in pertinent part:

(1) In general

The foreign market value of imported merchandise shall be the price, at the time such merchandise is first sold within the United States by the person for whom (or for whose account) the merchandise is imported to any other person who is not described in subsection (e)(3) of this section with respect to such person—

(A) at which such or similar merchandise is sold or, in the absence of sales, offered for sale in the principal markets of the country from which exported, in the usual commercial quantities and in the ordinary course of trade for home consumption, or

(B) if not sold or offered for sale for home consumption, or if the administering authority determines that the quantity sold for home consumption is so small in relation to the quantity sold for exportation to countries other than the United States as to form an inadequate basis for comparison, then the price at which so sold or offered for sale for exportation to countries other than the United States,

\*      \*      \*      \*      \*      \*

(2) Use of constructed value

If the administering authority determines that the foreign market value of imported merchandise cannot be determined under paragraph (1)(A), then, notwithstanding paragraph (1)(B), the foreign market value of the merchandise may be the constructed value of that merchandise, as determined under subsection (e) of this section.

[6] The court's opinion in *Timken* provides an excellent extended analysis of its view on the issue of circumstances of sale adjustments to constructed value.

this distinction as the challenged agency practice is identical in each of these cases. As stated in *Exportadores*, plaintiff herein has not "presented [any] convincing reason why *Timken* should not be followed." *Exportadores* at 1120. Commerce's adjustments to constructed value are therefore sustained.

IV. *Deduction of resale profits from ESP:*

Plaintiff's final challenge is directed at the ITA decision not to deduct resale profits from ESP. Timken maintains that Commerce was required, under The Trade Agreements Act of 1979, to deduct resale profits from ESP. Here again plaintiff asserts a claim previously rejected by the court. *See The Timken Co. v. United States ("Timken I")*, 10 CIT 86, 630 F. Supp. 1327 (1986). The Court, once more, finds plaintiff's arguments unpersuasive.

Section 1677a(e)(1) of title 19 (1982) compels the ITA to deduct from ESP any "commissions for selling in the United States the particular merchandise under consideration." Commerce has traditionally interpreted this provision to require a deduction of commissions only. Timken, on the other hand, claims that because the International Dumping Code ("Code")[7] recommends that "commissions" should be understood to encompass "commissions and profits," the ITA is required to adopt the broader interpretation which comports with international law.

Inasmuch as this matter was thoroughly examined and conclusively decided in *Timken I*, plaintiff does not present a sustainable argument herein. Suffice it to state, however, whatever guidance the ITA gleans from the Code is clearly hortatory rather than mandatory. This Court finds then, as did the court in *Timken I*, that Commerce's interpretation of "the word 'commissions' to mean only commissions, and not 'commissions and profit,' is reasonable" and in accordance with law. Id. at 111, 630 F. Supp. at 1348.

CONCLUSION

In accordance with the decision, the Court remands this action to the ITA. The ITA shall include imputed financing expenses into ESP and recalculate its computations as necessary. Adjusted results are due within forty-five days of issuance of this decision.

---

[7] The International Antidumping Code is a multilateral agreement endorsed by the United States in 1979 in the course of the Tokyo Round of Multilateral Trade Negotiations. Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade, *reprinted in* H.R. Doc. No. 153, Part 1, 96th Cong., 1st Sess. 312 (1979).