**GRUPO INDUSTRIAL CAMESA,**
**et al., Plaintiffs,**

**Wire Rope Importers' Association,**
**Plaintiff–Intervenor,**

**v.**

**UNITED STATES, Defendant,**

**The Committee of Domestic Steel Wire Rope and Specialty Cable Manufacturers, Defendant–Intervenor.**

Court No. 93–04–00236.
Slip Op. No. 94–82.

United States Court of International Trade.

May 18, 1994.

Shearman & Sterling, Thomas B. Wilner, Jeffrey M. Winton, Joshua A. Newberg and David C. Frederick, Washington, DC, for Grupo Indus. Camesa, Commercial Camesa, Cables Camesa, and Camesa, Inc.

Klayman & Associates, P.C., Larry Klayman, Washington, DC, for Wire Rope Importers' Ass'n.

Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel, U.S. Intern. Trade Com'n, Lyle B. Vander Schaaf, Washington, DC, for United States.

Harris & Ellsworth, Herbert E. Harris II, Cheryl Ellsworth, Jeffrey S. Levin and Jennifer de Laurentiis, Washington, DC, for the Committee of Domestic Steel Wire Rope and Specialty Cable Mfrs.

## OPINION

DiCARLO, Chief Judge.

Plaintiffs, foreign producers of steel wire rope from Korea and Mexico, move pursuant to USCIT R. 56.2, to challenge the final affirmative determination of the United States International Trade Commission that an industry within the United States is materially injured by reason of imports of steel wire rope from Korea and Mexico. *Steel Wire Rope from the Republic of Korea and Mexico,* Inv. Nos. 731–TA–546 and 547 (Final), USITC Pub. 2613 (March, 1993) ("Determination"); 58 Fed.Reg. 16,206 (1993) (notice). This court has jurisdiction under 28 U.S.C. § 1581(c) (1988). The court affirms the Commission's determination.

## STANDARD OF REVIEW

In an antidumping investigation the Commission is to make a final determination whether a U.S. industry is materially injured or threatened with material injury by reason of imports of the merchandise that has been found to be sold at less than fair value (LTFV). 19 U.S.C. § 1673d(b)(1) (1988). This court must uphold the Commission's final determination unless it is unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

## DISCUSSION

### 1. Whether Commissioners Not Present at Part or All of the Administrative Hearing May Vote on the Final Determination

■ The Commission, following an investigation and an administrative hearing, reached its affirmative determination of injury by a three-to-three vote.[1] Of the three Commissioners voting affirmatively, Chairman Newquist did not attend the hearing, and Commissioner Rohr was present for only part of the hearing.

Plaintiffs challenge the vote as contrary to law, claiming that acceptance of the votes of Chairman Newquist and Commissioner Rohr violates 19 U.S.C. § 1677c (1988), which requires the Commission to hold a hearing upon the request of any party to the investigation before making a final determination. Plaintiffs further assert that allowing the absent Commissioners to vote violates the principle laid down in *Morgan v. United States,* that "[t]he one who decides must hear." 298 U.S. 468, 481, 56 S.Ct. 906, 912, 80 L.Ed. 1288 (1936). Plaintiffs have not provided the court with any statute, judicial precedent or indication of congressional intent directly supporting their position. The court finds Plaintiffs' position lacks merit.

19 U.S.C. § 1677c(a)(1) provides that "the Commission shall ... hold a hearing in the course of an investigation upon the request of any party to the investigation before making a final determination...." Plaintiffs assert that Congress intended the "Commission" voting upon the final determination be the same as the "Commission" holding the hearing, and that Chairman Newquist and Commissioner Rohr were not part of Commission holding the hearing, and therefore were not eligible to vote.

■ The statute does not address the issue of whether voting Commissioners must attend the hearing. "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (footnote omitted). In reviewing the agency's answer, "a court may reject an agency interpretation that contravenes clearly discernible legislative intent," but "its role when that intent is not contravened is to determine whether the agency's interpretation is 'sufficiently reasonable.'" *Am. Lamb Co. v. United States,* 4 Fed.Cir. (T) 47, 54, 785 F.2d 994, 1001 (1986) (citations omitted).

Defendant maintains that the Commission has interpreted the statute by providing that public hearings held in "nonadjudicative investigations will be conducted by the Commission *or by one or more Commissioners.*" 19 C.F.R. § 201.13(b)(1) (1993) (emphasis added). Plaintiffs do not dispute that the hearing in question complied with this regulation. Instead, Plaintiffs argue that the regulation, which deals with nonadjudicative hearings, is inapplicable to this hearing because the hearing held by the Commission pursuant to 19 U.S.C. § 1677c is adjudicative in nature.

The court disagrees with plaintiffs' characterization of the hearing. Congress has stated that the antidumping proceedings are "investigatory rather than adjudicatory in nature." H.R.Rep. No. 317, 96th Cong., 1st Sess. 77 (1979); *accord* S.Rep. No. 249, 96th Cong., 1st Sess. 100 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 486; *see also Pasco Terminals, Inc. v. United States,* 83 Cust.Ct. 65, 76, 477 F.Supp. 201, 212 (1979), *aff'd,* 68 C.C.P.A. 8, C.A.D. 1256, 634 F.2d 610 (1980) (the hearing provided as part of the anti-

---

1. 19 U.S.C. § 1677(11) (1988) provides that, where the voting Commissioners are evenly divided as to whether the determination should be affirmative or negative, the Commission shall be deemed to have made an affirmative determination. The validity of this provision is not at issue herein.

dumping investigation is conducted "for the sole purpose of assisting the Commission in obtaining relevant and material facts . . . and not in the context of an adversary proceeding.") The statute itself exempts the hearing from the requirements of the Administrative Procedure Act, *see* 19 U.S.C. § 1677c(b), and provides for a hearing only "upon the request of any party," 19 U.S.C. § 1677c(a)(1), which further indicates that Congress intended the hearing to be non-adjudicative in nature.

Because an antidumping hearing is investigatory in nature, the Commission's regulation regarding the conduct of such hearing applies. *See* 19 C.F.R. § 201.13(b)(1). The hearing in question complied with that regulation, which permits the hearing to be conducted by "one or more Commissioners." *Id.*

Plaintiffs further argue that this case is controlled by *Morgan v. United States,* 298 U.S. 468, 56 S.Ct. 906, which states that "[t]he one who decides must hear." *Id.* at 481, 56 S.Ct. at 912. According to Plaintiffs, *Morgan* requires this court to reject the vote of those commissioners absent from the hearing, because they did not "hear" all of the evidence.

■ Plaintiffs quote one sentence from *Morgan* out of its context. In *Morgan,* the Court was concerned that "[i]f the one who determines the facts which underlie the order has not *considered* evidence or argument, it is manifest that the hearing has not been given." *Id.* at 480–81, 56 S.Ct. at 911 (emphasis added). The Court stated:

> the weight ascribed by law to the [agency] findings . . . rests upon the assumption that the officer who makes the findings has addressed himself to the evidence and upon that evidence has conscientiously reached the conclusions which he deems it to justify. That duty cannot be performed by one who has not *considered* evidence or argument. It is not an impersonal obligation. It is a duty akin to that of a judge. The one who decides must hear.

*Id.* at 481, 56 S.Ct. at 912 (emphasis added). The proceeding below did not violate *Morgan*'s requirement that the one who decides must consider the evidence. Chairman New-

quist and Commissioner Rohr had the benefit of the record containing a transcript of the hearing, and they are presumed to have considered all the evidence in the record. *See Rhone Poulenc, S.A. v. United States,* 8 CIT 47, 55, 592 F.Supp. 1318, 1326 (1984).

Plaintiffs do not attempt to rebut this presumption. Rather, Plaintiffs argue that, due to the conflicting testimony presented at the hearing on critical factual issues, *Morgan* requires more than simply a review of the cold transcript, particularly where, as here, the agency is sitting as the fact finder.

■ Neither *Morgan* itself, nor the cases that have been decided under *Morgan,* require such a result. Rather, "decisions of numerous and administrative agencies establish that, even without agreement of the parties, a member of an administrative agency who did not hear oral argument may nevertheless participate in the decision where he has the benefit of the record before him." *Gearhart & Otis, Inc. v. SEC,* 348 F.2d 798, 802 (D.C.Cir.1965) (footnotes omitted). Accordingly, the court holds that it was proper for Chairman Newquist and Commissioner Rohr to vote on the final determination.

### 2. Segmented Market Theory

■ The Commission is required to "evaluate all relevant economic factors which have a bearing on the state of the industry in the United States . . . within the context of the business cycle and *conditions of competition that are distinctive to the affected industry.*" 19 U.S.C. § 1677(7)(C)(iii) (1988) (emphasis added). Plaintiffs claim that the Commission failed to consider a "condition distinctive to the affected industry," that is, the U.S. steel wire rope market is segmented.

According to Plaintiffs, in the U.S. steel wire rope market, imported products compete only with like imported products, and domestic products compete only with like domestic products, and there is no direct competition between domestic producers and foreign producers. In support of their theory, Plaintiffs point to the market share in the period from 1987 through 1992. During that period, the market share of the U.S. producers remained constant, at approximately 60%, while the importers retained the re-

maining 40%. *Pls.' Br.* at 34. During that same period, U.S. producers charged consistently higher prices (approximately 30% higher) than the importers charged. *Id.* This data, according to Plaintiffs, conclusively demonstrates that there were two separate and distinct markets for wire rope within the United States. Plaintiffs claim that the Commission's failure to evaluate this factor rendered the determination contrary to law under 19 U.S.C. § 1677(7)(C)(iii). Alternatively, Plaintiffs contend that the evidence in support of their segmented market theory was so overwhelming that, to the extent the Commissioners voting affirmatively rejected the theory, the determination was unsupported by substantial evidence in the record.

█ It is not surprising that Plaintiffs can point to evidence in the record which supports the conclusion they urge and detracts from the evidence supporting the Commission's determination. *Matsushita Elec. Indus. Co. v. United States*, 3 Fed.Cir. (T) 44, 54, 750 F.2d 927, 936 (1984). The record may support the conclusion urged by Plaintiffs, as well as the opposite conclusion reached by the Commission. However, it is not the function of this court to decide whether it would have reached the same conclusion based on the same evidence. Instead, the role of this court "is limited to deciding whether the Commission's decision is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Id.*

Contrary to Plaintiffs' assertion that the Commission ignored the segmented market theory, the Commission discussed Plaintiffs' theory in its determination. *See* Determination at 21. After setting forth Plaintiffs' theory, the Commission went on to consider evidence contrary to that theory. The Commission relied on evidence, presented in part by Plaintiffs' witnesses at the hearing, that domestic and imported products in question are considered interchangeable, and that any differences between the imported and domestic products are insignificant. *Id.* at 22. The Commission also relied on the geographical overlap of the sales and the fact that the imports and the domestic products were sold throughout the period of investigation

through the same channels of distribution. *Id.* at 22–23. Thus, the Commission did consider Plaintiffs' segmented market theory, but rejected it in favor of the conclusion that there was a reasonable degree of direct competition between the imported and domestic products.

█ Plaintiffs also challenge the Commission's finding of causation, arguing that the Commission's finding that the subject imports caused material injury to the domestic industry was not supported by substantial evidence because the record contains overwhelming evidence that the U.S. market was segmented. The. court notes, however, in determining whether a domestic industry is injured by reason of imports, "[t]he statute's causation prerequisite to an affirmative injury determination is satisfied if the … imports contribute, even minimally, to the conditions of the domestic industry, and the Commission is precluded from weighing causes of injury." *British Steel Corp. v. United States*, 8 CIT 86, 96, 593 F.Supp. 405, 413 (1984) (relying on legislative history contained in S.Rep. No. 249, 96th Cong., 1st Sess. 56–57 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 442–443).

The Commission discussed in detail the evidence supporting its conclusion that competition existed between imported and domestic steel wire rope and that the imports caused material injury to the domestic industry. The Commission found that the subject imports increased substantially during the period from 1989 to 1991, and that the increase in the lower priced imports prevented the domestic industry from increasing its domestic shipments and its market share. Determination at 31. The Commission also found that the domestic market was "relatively price sensitive and a small quantity of imports will generally result in adverse price effects." *Id.* at 25. Although Plaintiffs claim that the portions of the testimony, upon which the Commissioners rely in part, do not support this finding, substantial evidence in the record indicates otherwise. For example, most purchasers responding to inquiries of the Commission reported that they decided to purchase the imports due to the lower price. Rep. at I–71–I–73. One witness stat-

ed at the hearing that "price is a dominant [factor], and particularly in a down turn market where people are pressed for profitability, they will go for the lowest price over other factors." App.List 1, Doc. 214, at 150.

The Commission further found that the channels of distribution were the same and that overall differences between imports and domestic products were relatively insignificant. Determination at 30. In addition, the Commission relied upon confirmed lost sales allegations due to the low prices of the imports. *Id.* at 31.

Based on the increased volume of imports, the price sensitivity of the market, the fungibility between the imported and domestic products, and other factors discussed, the Commission concluded that "the subject imports have had an adverse impact on domestic production, sales, capacity utilization, and financial performance." *Id.* at 31–32. The court finds that the record contains substantial evidence supporting the causal link between the subject imports and the material injury suffered by the domestic producers.

Plaintiffs additionally claim that causation cannot be established because removal of the LTFV imports from the market would only result in increased sales within the United States of fairly traded imports that are also priced substantially lower than domestic products. This argument, however, assumes that the LTFV imports compete only with other imports. As already discussed, the theory of market segmentation was properly rejected by the Commission.

### 3. Considering the Condition of Industry in the Context of Business Cycle

Plaintiffs further contend that the Commission failed to examine the impact of unfairly traded imports on the domestic industry "within the context of the business cycle," as required by 19 U.S.C. § 1677(7)(C)(iii). Plaintiffs argue that the three-year period of investigation coincides with only a portion of the business cycle of the industry, during which "apparent consumption for steel wire rope declined from its peak to its cyclical trough." According to Plaintiffs, the "cycle" in demand for steel wire rope is approximately a five-year period.

The Commission considered Plaintiffs' business cycle argument presented during the administrative proceeding, and recognized a steady decline in U.S. consumption during the period of investigation. *See* Determination at 16. However, the Commission apparently did not view that as a significant factor for the condition of the industry, and made no finding concerning either the existence of a business cycle or any effect thereof.

The Commission "is charged only with rationally considering impact on the domestic industry in light of the relevant factors" and "is not required to issue findings and conclusions on an issue concerning a statutory element simply because it was presented by [a party]." *Hercules, Inc. v. United States*, 11 CIT 710, 743, 673 F.Supp. 454, 482 (1987) (citations omitted). *See also Wieland Werke, AG v. United States*, 13 CIT 561, 568, 718 F.Supp. 50, 56 (1989) (rejecting plaintiffs' argument that the Commission ignored the industry cycle in finding that imports were a cause of material injury). Where, as here, the record contains substantial evidence supporting the Commission's conclusion that imports contribute to the conditions of the domestic industry, the court is not in the position to substitute its own conclusion of the facts for that of the Commission.

### CONCLUSION

The court holds that the Commission's determination is supported by substantial evidence on the record and is in accordance with law. Accordingly, Plaintiffs' motion for judgment upon agency record is denied, and the Commission's final determination is affirmed.